**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JEFFREY K. BROWNE, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**LUIS MELENDEZ, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**MARCELA BROWNE, Defendant**

Case Nos. SX-07-CR-600, SX-07-CR-601, SX-08-CR-053

Superior Court of the Virgin Islands

Division of St. Croix

September 22, 2010

61

67

ALPHONSO G. ANDREWS, ESQ., Special Assistant Attorney General, United States Attorney's Office, Christiansted, St. Croix, USVI, *Attorney for Plaintiff.*

GARFIELD BLOODMAN, ESQ., Assistant Attorney General, Department of Justice, Christiansted, St. Croix, USVI, *Attorney for Plaintiff.*

ANDREW L. CAPDEVILLE, ESQ., Law Offices of Andrew L. Capdeville, P.C., St. Thomas, USVI, *Attorney for Defendant Jeffrey K. Browne.*

BRUCE P. BENNETT, ESQ., Hunter Cole & Bennett, St. Croix, USVI, *Attorney for Defendant Luis Melendez.*

VINCENT A. COLIANNI, II, ESQ., Colianni & Colianni, St. Croix, USVI, *Attorney for Defendant Marcela Browne.*

DONOHUE, *Judge*

## MEMORANDUM OPINION

(September 22, 2010)

**THIS MATTER** is before the Court on Defendant Jeffrey K. Browne's (herein after "J. Browne") "Motion for Judgment of Acquittal"

and "Motion for New Trial" filed on December 28, 2009. On December 31, 20097, Defendant Luis Melendez (hereinafter "Melendez") joined in both Motions. On January 8, 2010, and January 12, 2010, the People of the Virgin Islands (hereinafter "People") filed Oppositions to both Motions. Defendant J. Browne filed his Replies to the People's Oppositions on February 1, 2010 and February 26, 2010.

On January 8, 2010, and January 11, 2010, Defendant Marcela Browne (hereinafter "M. Browne") filed a "Memorandum of Law in Support of Marcella Browne's Motion for Judgment of Acquittal" and "Marcella Browne's Memorandum of Law in Support of Motion to Dismiss Count One of the Information."[1] On January 12, 2010, the People filed its Oppositions to both Defendant M. Browne's Motions.

## I. FACTUAL BACKGROUND[2]

On December 25, 2007, at approximately 1:27 a.m., a drive-by shooting occurred in the John F. Kennedy Terrace Housing Community (hereinafter "Kennedy Community") in Christiansted, St. Croix, U.S. Virgin Islands.

In a fourteen-count Superceding Information filed on April 18, 2008,[3] Defendant J. Browne and Defendant Melendez were charged with aiding and abetting each other relating to numerous crimes[4] concerning the events of December 25, 2007. The charges included: 1) two counts of first degree murder for the killings of Kenyetta A. McIntosh and Allen Burke; 2) four counts of attempted murder of Euclyn Prentice, Adowa Flemming, Jesus Serrano, and Rodney Barbel; 3) four counts of assault in the third degree for the assaults of Euclyn Prentice, Adowa Flemming, Jesus Serrano, and Rodney Barbel; 4) one count of reckless endangerment; 5) one count of unauthorized possession of a firearm; 6) and one count of interference of an officer discharging his duty.

---

[1] The Court does not have are cord that separate Motions were filed corresponding to these supporting Memorandums.

[2] The following brief synopsis of facts is based on the evidence presented at trial.

[3] The original Information as to Defendants J. Browne and Melendez was filed on December 29, 2007. The original Information as to Defendant M. Browne was filed on January 31, 2008.

[4] Counts One to Twelve of the Information pertain to Defendants J. Browne and Melendez, Count Thirteen pertains to Defendant M. Browne, and Count Fourteen pertains to Defendants J. Browne, Melendez, and M. Browne. (*See* Superseding Information, filed April 18, 2008).

Defendant M. Browne, the wife of Defendant J. Browne and sister of Defendant Melendez, was charged in the Superseding Information with one count of accessory after the fact and one count of interference of an officer discharging his duty (aided and abetted by Defendants J. Browne and Melendez). Both counts relate to false or misleading statements given to police in reference to the events of December 25, 2007.

At the eleven-day jury trial that began on September 15, 2009, the jury heard testimony from over thirty witnesses and was presented with over fifty exhibits. The jury heard eyewitness testimony from Martika Jarvis, Marsela Jarvis, and Nioka Shaw that in the early morning hours of December 25, 2007, Defendant J. Browne was seen driving a gray or silver vehicle identified as a Hyundai Brio in Kennedy Community. The Hyundai Brio was owned by the Browne Defendants. Witnesses described the Hyundai Brio as having a particular marking and noted having seen Defendant M. Browne driving the vehicle previous to the events of December 25, 2007.

The witnesses testified that on the early morning of December 25, 2007, they saw Defendant J. Browne driving in the Kennedy Community, in the vicinity of building no. 5, where several persons were congregating and some were engaged in a gambling game. These persons included Kenyetta A. McIntosh a/k/a "Daffy," Allen Burke, Euclyn Prentice, Adowa Flemming, Jesus Serrano a/k/a "Isa," Rodney Barbel, and others known as "Peedee," "Choko," "Cheapie," and "Goldo" (or "Golo"). The occupants of the vehicle, after driving back and forth, opened fire striking and injuring several persons, namely, Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel; and leading to the deaths of Mr. McIntosh and Mr. Burke. One of the eyewitnesses, Marsela Jarvis, identified Defendant Melendez, whom she referred to as "Gulo," as one of the shooters who discharged shots from the vehicle.

In their investigation after the shooting, police questioned Defendant M. Browne at approximately 10:10 a.m., on December 25, 2007. She stated that between the hours of 1:00 a.m. and 2:00 a.m., she was driving her Hyundai Brio and had left her husband and her brother at her residence in Richmond. She also stated that she left her Hyundai Brio in the Harbor View Housing Community because it would not reverse. In another statement on February 4, 2008, Defendant M. Browne acknowledged that her previous statement of December 25, 2007 was not true. To further cast doubt on Defendant M. Browne's statements, video

70

footage of the Divi Carina Bay Casino and testimony of casino's surveillance manager revealed that Defendant J. Browne and Defendant Melendez as well as another male were at the casino at 12:39 a.m. on December 25, 2007.

After the close of the jury trial, the Defendants were found guilty on all charges. Defendant J. Browne moved for a new trial pursuant to Rules 7 and 135 of the Rules of the Superior Court, and Rule 33 of the Federal Rules of Criminal Procedure; and also moved for judgment of acquittal pursuant to Rules 7 and 135 of the Rules of the Superior Court, and Rule 29 of the Federal Rules of Criminal Procedure. Defendant Melendez joined in both Motions. Defendants' Motion for Judgment of Acquittal is a renewal of the two Rule 29 Motions made during the trial. The Court denied both Rule 29 Motions.

Defendant M. Browne moved for judgment of acquittal and contends that she had no knowledge of the underlying crimes and her husband's and brother's alleged involvement therein. She seeks a judgment of acquittal on the accessory after the fact count. On August 23, 2010, Defendants came before the Court for sentencing. The Court denied the Defendants' Motions from the bench, and indicated a written Opinion and Order would follow. Accordingly, and for reasons stated more fully herein, the Court now reaffirms its ruling.

## II. STANDARD of REVIEW

### A. Motion for Judgment of Acquittal

■ The Superior Court considers a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure,[5] as no Superior Court rule exists. Specifically, "[w]hen the Superior Court considers a motion for judgment of acquittal, it views the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *Stevens v. People of the Virgin Islands*, 52 V.I. 294, 305 (V.I. 2009) (citations and internal quotation marks omitted); *accord Gov't of the Virgin Islands v. Davis*, 35 V.I. 72 (Terr. Ct. 1997); *Gov't of the Virgin Islands v. Smalls*, 32 V.I. 157 (Terr. Ct. 1995).

---

[5] The Federal Rules of Criminal Procedure are made applicable to the Superior Court through Rule 7 of the Rules of the Superior Court.

The Court "must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the [People], to support it." *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992) (internal citation and citations omitted). "Thus, a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.' " *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

■ "Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may [the court] overturn the verdict." *Gov't of Virgin Islands v. Baron*, 48 V.I. 88, 95 (Super. Ct. 2006) (citing *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir.1997)). Additionally, "[s]trict deference [must] be accorded the jury's findings; the court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *United States v. De Miranda*, Crim. No. 2008-20, 2008 U.S. Dist. LEXIS 104621, *2 (D.V.I. 2008) (quoting *United States v. Charles*, 949 F. Supp. 365, 367, 35 V.I. 306 (D.V.I. 1996)). It therefore follows that a defendant's bears a heavy burden when challenging the sufficiency of the evidence. *See Anderson*, 108 F.3d at 481.

### B. Motion for New Trial

■ Rule 135 of Superior Court Rules governs a motion for a new trial. "The Court may grant a new trial to a defendant if required in the interest of justice."[6] SUPER. CT. R. 135. "The decision whether to grant a new trial is in the trial court's sound discretion." *Gov't of the Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1184 (D.V.I. 1989) (citations omitted). "The Superior Court plays a much more active role in considering a motion for a new trial based on the argument that the jury's verdict was against the weight of the evidence." *Stevens*, 52 V.I. at 305. Notably, "a court must weigh the evidence rather than examine its sufficiency and in doing so, it may weigh the credibility of witnesses." *People of Virgin*

---

[6] Rule 135 mirrors the standard in Rule 33(a) of the Federal Rules of Criminal Procedure, which provides "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

72

*Islands v. Ward*, 52 V.I. 71, 85 (D.V.I. 2009); *Davis*, 35 V.I. at 85. "If after weighing the evidence, the court determines that there has been a miscarriage of justice, the court may grant a new trial, and if trial error had a substantial in fluence on the verdict, the court must grant a new trial." *Ward*, 52 V.I. at 81; *accord Stevens*, 52 V.I. at 305 (citing *United States v. Silveus*, 542 F.3d 993, 1004-05, 50 V.I. 1101 (3d Cir. 2008)) ("[E]ven if [the Superior Court] believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted.").

■ The Court however is not required to sit as the thirteenth juror. *See Stevens*, 52 V.I. at 306 (holding no abuse of discretion when Superior Court failed to act as a thirteenth juror). "The Court may exercise its discretion to order a new trial if it finds that the evidence preponderates heavily against the verdict; however, such exercise of discretion is to be used only in exceptional circumstances." *Davis*, 35 V.I. at 85 (citing *Gov't the Virgin Islands v. Leycock*, 93 F.R.D. 569, 19 V.I. 59, 62 (D.V.I. 1982)).

## III. DISCUSSION

### A. Defendants' Jeffrey K. Browne and Luis Melendez

#### 1. Motion for Judgment of Acquittal

*Sufficient Evidence Supported the Convictions of Attempted Murder and Assault in the Third Degree*

Overall, Defendants[7] argue that the evidence presented at trial was insufficient to support the Defendants' convictions, even when viewed in the light most favorable to the People. The Court addresses each of Defendants' arguments in turn.

Defendants first challenge the sufficiency of evidence as to the attempted murder and assault in the third degree counts relating to Euclyn Prentice, Adowa Flemming, Jesus Serrano, and Rodney Barbel. Defendants argue that none of these victims testified to seeing Defendant J. Browne that evening or identified Defendant J. Browne as the shooter who caused their injuries. As to Mr. Barbel, Defendants argue

---

[7] The use of "Defendants" in Section A of the Discussion refers only 10 Defendants J. Browne and Melendez.

that the People charged assault in the third degree for discharging a firearm and striking Barbel with bullets; however, Mr. Barbel testified that he was not shot but sustained an injury to his ankle during the shooting. Defendants further contend that the elements of deliberation and premeditation are lacking to sustain the attempted murder convictions. Defendants argue that in order to convict Defendants of attempted murder, the People needed to present evidence that the attacks on Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel were part of a "specific-intent premeditated plan to kill one or more of these men." (Def.s' Reply to Gov. Opp'n, 4.) Based on the evidence presented at trial, in the light most favorable to the People, the Court finds that the jury had sufficient evidence to convict Defendants on the attempted murder and assault in the third degree counts relating to Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel.

 "Under Virgin Islands law, third-degree assault includes causing or attempting to cause bodily harm with a weapon." *Nanton v. People of the Virgin Islands*, 52 V.I. 466, 484 (V.I. 2009) (citing 14 V.I.C. § 297(2)). *See also Ritter v. Virgin Islands*, 51 V.I. 354, 360 (V.I. 2009) (quoting 14 V.I.C. § 291) ("Assault is itself defined as the attempt to commit a battery or the making of 'a threatening gesture showing in itself an immediate intention coupled with the ability to commit a battery.' "). Therefore, to find Defendants guilty of assault in the third degree, the jury must have found that Defendants assaulted Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel with a deadly weapon.

 As it relates to attempted murder, "one who unsuccessfully attempts to commit an offense is subject to criminal liability for such attempt." *Motta v. Gov't of Virgin Islands*, Crim. No. 2002/163, 2004 U.S. Dist. LEXIS 25112, *6 (D.V.I. 2004) (citing 14 V.I.C. § 331). "[T]he standard for determining attempt liability has been judicially defined to require proof that the perpetrator took a substantial step[8] toward completion of the underlying crime." *Id.* (citing *Gov't of Virgin Islands v. Albert*, 18 V.I. 21, 24 (D.V.I. 1980)); *Parson v. Gov't of Virgin Islands*,

---

[8] "Our courts have adopted the following two-prong test for determining whether a defendant's acts constituted a 'substantial step' for the purpose of attempt liability: 1) the perpetrator bore an intent to do an act or bring about certain consequences which in law would amount to a crime; and 2) the perpetrator did an act in furtherance of that attempt which goes beyond mere preparation." *Motta*, 2004 U.S. Dist. LEXIS 25112, *7.

167 F. Supp. 2d 857 (D.V.I. App. Div. 2001)). The underlying crimes here are the attempted murders of Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel. Under Title 14 of the Virgin Islands Code, Section 921, murder is defined as "the unlawful killing of a human being with malice aforethought." First degree murder is "**All murder which-(1) is perpetrated by** means of poison, lying in wait, torture, detonation of a bombor by **any other kind of willful, deliberate and premeditated killing**." 14 V.I.C. § 922 (emphasis added). Consequently, to find Defendants guilty of attempted murder, the jury must have found (1) that Defendants attempted to kill Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel; (2) that Defendants acted willfully and with malice aforethought; and (3) that Defendants acted with premeditation and deliberation. *See* 14 V.I.C. §§ 921, 922, 331. (*See also* Trial Tr. vol. XII, 208-09, Sept. 25, 2009).

The Court at this juncture "must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences." *Iafelice*, 978 F.2d 92 at 94. The Court must sustain the jury verdict if, taking the evidence in the most favorable light to the People, there is substantial evidence to support the verdict. Accordingly, *all* the evidence presented at trial, must be considered in determining whether there is substantial evidence from which the jury could find Defendants were guilty of the crimes charged.

Defendants are first mistaken in their representation that Defendant J. Browne was not seen at the scene, nor identified by witnesses as being present that night. Eyewitness testimony of Martika Jarvis and Nioka Shaw placed Defendant J. Browne at the scene driving immediately before the shooting as well as during the shooting. Even more compelling, Marsela Jarvis testified that she was on her porch when she first saw the vehicle as it drove into the parking lot. She observed that the driver's side window was down and she indentified Defendant J. Browne as the driver. She testified that the vehicle was moving slowly and the lights were off. At some point, she moved inside and continued to watch the vehicle from her window. Marsela Jarvis observed Defendant Melendez, whom she referred to as "Gulo," in the passenger side of the vehicle. Very shortly thereafter, the vehicle lights came on and shots were fired from the vehicle. She recalled seeing "[s]moke and fire and a hand sticking out the window." (Trial Tr. vol. V. 136-137, Sept. 17, 2009). The hand came out

of the "passenger side window" and then she saw ahead come out and she recognized "Gulo." (Trial Tr. vol. V. 137, Sept. 17, 2009).

Testimony from Nilda Lopez, although admitting to not have seeing the driver on the night of December 25th, identified the vehicle she saw as a silver Hyundai vehicle known to her to be driven previously by Defendant M. Browne. Testimony from Reuben Garcia, revealed that he saw a gray vehicle that night and recognized it as one he had seen previously at the residence in Richmond known to belong to the Defendant J. Browne and Defendant M. Browne.

Mr. Flemming testified that he saw a gray or silver vehicle moving in the area when the shots were being fired. He too had seen the vehicle before parked in Richmond, at a house he knew to be Defendant J. Browne's house, and had seen whom he believed to be Defendant J. Browne's wife previously driving it.

Mr. Prentice recalled seeing the vehicle coming toward them as they were talking, before beginning a gambling game. He noted that when he knew the vehicle to be Defendant J. Browne's because he had previously seen it in Richmond, and because of the sticker on the glass. He testified that the vehicle came toward the group he was with and he "saw a gun man come out the window and start firing." (Trial Tr. vol. V. 210, Sept. 17, 2009). At that point, Mr. Prentice began to run but was still shot seventeen times in both his legs.

 The aforementioned witnesses' testimony allowed the jury to infer the Defendants were present at the scene and committed the crimes charged. Defendants are mistaken in the assertion that the victims themselves had to identify Defendants as perpetrators of the crimes. The People did not have to prove that the victims themselves identified the Defendants but rather that the evidence presented allowed the jury to reasonably infer the Defendants' presence and participation in the crimes charged. While each victim may not have specifically and individually identified the Defendants as the shooters, the jury is permitted to draw *reasonable* inferences based upon all the evidence provided to them. As such, the testimonies of the witnesses describing their familiarity with Defendant J. Browne's vehicle and seeing it shortly before the shooting in the Kennedy Community coupled with Marsela Jarvis' testimony identifying Defendant J. Browne as the driver and Defendant Melendez as the passenger was adequate to allow the jury to draw its conclusion of guilt.

■ The jury, likewise, could find that these actions offering shots at a group of persons were premeditated, deliberate, willful, and were done with malice aforethought — meeting the elements of attempted murder. The Court's jury instructions provided the jury with several definitions to draw upon their conclusions. For instance, "malice aforethought" was defined as "an intent at the time of killing willfully to take the life of a human being or an intent willfully to act in callous and wanton disregard of consequences of human life. But malice aforethought does not necessarily imply any ill will, spite or hatred toward the individual killed." (Trial Tr. vol. XII, 200, Sept. 25, 2009). "Willfully" was defined in the jury instructions as meaning "the Defendant . . . knowingly performed an act on purpose as contrasted with accidentally, carelessly, or unintentionally." *Id.* at 201. "Deliberation and Premeditation" were defined exhaustively as follows:

> Deliberation and premeditation are very similar, and they mean virtually the same thing. Premeditation itself is typically associated with the kind of murder we say was cold-blooded, and required a period of time in which the defendant actually reflected and deliberated, thought the matter over before acting, determined to do something, and then did it. However, the necessary period of time for such reflection cannot be affirmatively fixed or arbitrarily determined. It is simply the time that is required to conceive a design in your mind an [sic] and act upon it. This time period will vary according to the minds of persons, temperament of persons and according to the surrounding circumstances in which a person is placed. The same goes for deliberation. It does not require any prolonged meditation. Again, the law fixes no limit as to the time which must elapse between the formation of the intent to kill, and carrying out that intent. Avery brief period will suffice, provided the formed intent to kill was consciously conceived in the mind of the killer before the homicidal act was committed.

*Id.* at 201-202. The jury was entitled to reasonably infer from the totality of the evidence presented to them that Defendants were indeed the occupants of the silver or gray vehicle identified by witnesses as the source of where the shots were being fired from. The jury could have also inferred that natural and probable consequences of discharging shots, aimed at a group of persons, was intended to kill those persons. "Intent is a question of fact which may be inferred from the conduct of the parties under the circum-

77

stances; it can rarely be proven through direct evidence." *Motta*, 2004 U.S. Dist. LEXIS 25112, at *7 (citing *Gov't of V.I. v. Lake*, 362 F.2d 770, 5 V.I. 594 (3d Cir.1966)). "[T]he prosecution must adduce objective, unequivocal facts which permit a reasonable inference of criminal intent." *Id.* (citing *United States v. Everett*, 700 F.2d 900, 908-09 (3d Cir.1983) (noting that attempt liability may not be based merely on one's thoughts, desires, or motives, through indirect evidence, without reference to any objective fact)).

■ Notably, Defendant J. Browne and Defendant Melendez were charged with aiding and abetting in each count of attempted murder and assault in the third degree. Therefore, the jury need not have found that each one personally committed a specific act but rather they aided and abetted each other during the commission of the offenses. (*See* Trial Tr. vol. XII, 198, Sept. 25, 2009). The People had to prove beyond a reasonable doubt that: (1) Defendants associated themselves with the crimes to be committed; (2) the Defendants participated in the crimes as something they wished to bring about; and (3) the Defendants sought by their words or actions to make the crimes succeed. (*See* Trial Tr. vol. XII, 199, Sept. 25, 2009). *See also* 14 V.I.C. § 11; *accord Nanton*, 52 V.I. at 495. Moreover, "[t]he whole premise of aider/abettor liability is to hold responsible those who shared criminal intent with the actor and who sought, in word or deed, to bring about the act." *Motta*, 2004 U.S. Dist. LEXIS 25112, at *21 (citing 14 V.I.C. § 11).

■ Accordingly, the Court finds that having heard and weighed the witnesses' testimony, corroborated with evidence that multiple guns were used during the shooting, allowed the jury to find that Defendants' actions were premeditated, deliberate, willful, and were done with malice aforethought sufficient to find Defendants guilty of attempted murder. Consequently, the Court will not disturb the jury's verdict as to these counts.

■ It also follows that the jury was not unreasonable in finding that Defendants used unlawful violence by the use of a firearms that caused the injuries of Mr. Prentice, Mr. Flemming, Mr. Serrano, and Mr. Barbel. These victims testified that as a result of shots being discharged on December 25, 2007, they sustained various injuries. With regards to Mr. Barbel, he testified that he was not shot but sustained an injury to his ankle at some point during the shooting. Regardless of whether he was struck by a bullet, or some other object, this does not negate the fact that

the jury concluded that Defendants used unlawful violence against Mr. Barbel by use of a firearm sufficient to meet the requirement of assault in the third degree. Mr. Barbel testified that as a result of shots being fired, he started running for cover and ended up on the ground. As a result, he was injured. The Court finds no basis to disturb the jury's verdict as to Mr. Barbel. Consequently, Defendants' contention that the evidence was insufficient for the jury to find them guilty beyond a reasonable doubt as to the attempted murder and assault in the third degree counts is rejected.

### *There Is No Reason for Witness Nioka Shaw's Testimony to be Disregarded by the Jury*

██ Defendants argue that Nioka Shaw was the only witness that testified that she saw the vehicle reversing and that testimony is contrary to the accounts of Martika Jarvis and Marsela Jarvis, who saw the vehicle going forward. Defendants contend that Ms. Shaw's testimony was incredible and unsubstantiated and should be disregarded. It is important to note that, "a jury is free to believe part of a witness' testimony and disbelieve another part of it." *United States v. Boone,* 279 F.3d 163, 189 (3d Cir. 2002) (citation omitted). "Thus, a witness' testimony is not insufficient to establish a point simply because he or she later contradicts or alters it." *Id.* Furthermore, "[t]estimony of the prosecution's main witnesses could either be incredible, pure fabrication or 'flatly inconsistent' with the testimony of other prosecution witnesses. But even if the testimony of a witness was inconsistent with that of another witness, the balance of the evidence, including all the facts and circumstances surrounding the killing[s], would still be sufficient to [uphold] Defendant[s'] conviction'[s]." *Ward,* 52 V.I. at 85. This Court finds that this is such a case. The jury was allowed and enabled to give the appropriate weight to any and all of the witnesses that testified during trial and further balanced all of the evidence presented before it. Therefore, the Court finds Defendants contentions are unpersuasive and finds no reason to grant a judgment of acquittal based on this argument.

### *Witness Testimony of Marsela Jarvis and Martika Jarvis Will Not Be Stricken and Disregarded from the Record*

Defendants argue that Marsela Jarvis' testimony at trial that she saw Defendant J. Browne in the subject vehicle firing shots was contrary to her earlier statement. Defendants argue that the People knew at least a

week before trial that Marsela Jarvis would testify differently from her original statement. Defendants contend that this material information is exculpatory and should have been turned over to the defense. Defendants make the same argument as to Martika Jarvis, who they argued gave her first statement to police sometime in March 2009. Therefore, Defendants aver that the witnesses' testimonies should now be stricken and disregarded under the precepts of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and its progeny.

 The United States Supreme Court held in *Brady v. Maryland* that due process required the prosecution to disclose exculpatory evidence to the defense including materials "that go the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." *United States v. Hill*, 976 F.2d 132, 135 (3rd Cir. 1992) (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady* rule]."). Therefore, "[t]o prove a *Brady* or *Giglio* violation, the defendant must show that (1) the government withheld evidence, (2) the evidence was favorable, either because it was exculpatory or has impeachment value, and (3) the withheld evidence was material." *Gumbs v. People of the Virgin Islands*, Crim. App. No. 2003-14, 2010 U.S. Dist. LEXIS 72125, *10, [WL], *3 (D.V.I. July 19, 2010) (citing *United States v. Risha*, 445 F.3d 298, 303 (3rd Cir. 2006)).

Indeed if the People withheld first or second statements of Marsela Jarvis and/or Martika Jarvis, knowing the statements were exculpatory or had impeachment value or that they would affect the jury's judgment, they would warrant disclosure to the Defendants. However so, the Defendants have not shown that these statements exist and that the People failed to disclose them. Martika Jarvis testified that the police did not come to her after the incident and she never gave them a written statement. She testified that she first spoke to the police in late March or early April, 2009 while she was off-island, as a result of a conversation she had with her aunt, Marsela Jarvis. She was then subpoenaed to testify at trial. There is no evidence that Martika Jarvis gave a statement to the People that warranted disclosure to the defense.

 On the other hand, Marsela Jarvis admitted to only telling the police that she saw Defendant J. Browne driving the vehicle the

Wednesday before the trial began. The People contend that Marsela Jarvis' testimony does not conflict with her earlier statement because Ms. Jarvis' statement did not say that she did not see the shooters. Marsela Jarvis testified that she spoke with the prosecution team about observations that she previously withheld including identifying Defendant J. Browne as the driver of the vehicle. It does not appear that the People shared this information with the defense. Despite this, to show a *Brady* or *Giglio* violation, the information sought must be favorable to the defense, in that it is exculpatory or has impeachment value.

██ "Exculpatory evidence" is defined by Black's Law Dictionary as "[e]vidence tending to establish a criminal defendant's innocence" whereas "inculpatory evidence" is "[e]vidence showing or tending to show one's involvement in a crime or wrong." Black's Law Dictionary 637-38 (9th ed. 2009). Considering Marsela Jarvis' testimony, the Court does not find that it was exculpatory; nor have Defendants shown it had impeachment value or affected the jury's judgment of Ms. Jarvis' credibility. Marsela Jarvis testified, in response to why she "recently" came forward with the information (a week before trial), that she does not trust police but thought justice must be served. Defendants failed to prove that Ms. Jarvis' statements were exculpatory or had impeachment value, and the Court need not address the element of materiality. The Court finds that as it pertains to the testimonies of Marsela Jarvis and Martika Jarvis, Defendants have failed to show a *Brady* or *Giglio* violation that would warrant a judgment of acquittal.

### *Defendants Have Failed to Prove that the People Deliberately Withheld Material Information from the Defense*

Here, Defendants arguments are sketchy at best. Defendants assert that the People failed to produce two "NIBIN"[9] reports, relating to shotgun casings, which would have been beneficial to the defense. This type of evidence falls within the purview of *Brady* and Defendants have failed to show, or at minimum argue, a *Brady* violation. There is nothing on there cord that suggests an additional report(s) exists and that the People withheld it. Without more, the Court rejects these arguments.

---

[9] Neither Party explained on the record what the acronym "NIBIN" stood for.

*Sufficient Evidence Supported the Convictions of Murder in the First Degree for the Deaths of Allen Burke and Kenyetta A. McIntosh*

Defendants finally contend that the evidence presented at trial was insufficient to support the Defendants convictions for murder in of Nioka Shaw, Marsela Jarvis, and Martika Jarvis. They the first degree. Defendants reiterate their previous arguments particularly with regard to the testimonies of Nioka Shaw, Marsela Jarvis, and Martika Jarvis. They additionally assert that the death certificates concerning the killings of Kenyetta A. McIntosh and Allen Burke were erroneously admitted and therefore, insufficient to establish that the victims are deceased. Defendants proffer that the death certificates were issued by Dr. D'Michelle P. DuPre, who was the Medical Examiner for the Virgin Islands. However, at the time the death certificates were issued, Defendants assert that Dr. DuPre was not licensed to practice medicine in the Territory of the Virgin Islands. Because of this, Defendants contend that Dr. DuPre was not qualified to certify the causes of death of Mr. McIntosh and Mr. Burke.

■■■ Defendants, nonetheless, have failed to show that Dr. DuPre was not licensed at the time she signed the death certificates and, if she was not licensed, that her signature invalidated the certificates. Furthermore, Defendants have presented no evidence to the contrary that demonstrates that either Mr. McIntosh and/or Mr. Burke died of a cause other than multiple gunshot wounds.

■■■ In *Newton v. Gov't of Virgin Islands*, 48 V.I. 349, (D.V.I. 2005), the District Court of the Virgin Islands Appellate Division considered whether the prosecution failed to prove victim's death was a result of being struck by the appellant's vehicle. Appellant argued that there was not sufficient evidence to prove he caused the victim's death, where there was no medical expert testimony connecting the victim's injuries and subsequent death to appellant's striking him with his vehicle. The Court rejected Appellant's arguments and explained:

> The causal connection between the appellant's conduct and the victim's death maybe shown by either direct or circumstantial evidence, as the law makes no distinction between the two. *See, e.g., Government of V.I. v. Bradshaw*, 569 F.2d 777, 779, 15 V.I. 481 (3d Cir.1978). Thus, **a finding of guilt for murder is sustainable so long**

**as the jury had before it sufficient evidence from which it could reasonably infer a nexus between the defendant's actions and the victim's subsequent death. In that regard, expert medical testimony generally is not required in the normal case where there is no conflicting theory of causation and the nature of the death or injury is not so obscure that its source cannot be readily inferred from the facts of the case.**

*Id.* at 355 n.8 (emphasis added). This Court agrees and further reiterates that the essential question is whether the jury was permitted to draw reasonable inferences, based on the evidence presented to them that Mr. McIntosh and Mr. Burke died as the result of sustaining multiple gunshot wounds received on December 25, 2007, and that Defendants were responsible for the multiple gunshot wounds sustained by Mr. McIntosh and Mr. Burke.

 To find Defendants guilty of murder in the first degree, the jury must have found beyond a reasonable doubt (1) that Defendants unlawfully killed Kenyetta A. McIntosh and Allen Burke; (2) that Defendants acted willfully, with malice aforethought; (3) and that Defendants acted with premeditation and deliberation. *See* 14 V.I.C. §§ 921-922. (*See also* Trial Tr. vol. XII, 205-06, Sept. 25, 2009).

The jury heard testimony from Corporal Lionel Sarauw of the Virgin Islands Police Department, who testified about his observations on December 25th. He noted that he arrived at the Kennedy Community at 1:29 a.m., and there were at least 40 persons in a crowd around building no. 5. He got out of his vehicle and found two black male shooting victims. One was lying on the sidewalk and "had a gunshot wound through his chest and both legs"; and the other "had a gunshot wound to his face and upper body." (Trial Tr. vol. IV, 55, Sept. 16, 2009). He noted that persons who were at the scene picked up the male with the wound to his face and took him to a vehicle to take him to the hospital. He stayed with the other victim until other officers and the ambulance arrived.

Jacqueline Thomas Eastman, Allen Burke's mother, testified that she last saw her son home around 10:00 p.m. on December 24, 2007. When she got a telephone call that he had been shot, she and her husband rushed to Kennedy Community, where she found him lying on the sidewalk lifeless. Mr. Barbel testified that he was with both Mr. Burke and Mr. McIntosh (known to him as "Daffy") before the shooting. He was gambling and Mr. Burke was observing the game when they heard

83

gunshots and he ran for cover. When the shooting was over, he came out from where he ran to, and found Mr. McIntosh on the ground. With help, he carried him to his car and took him to the hospital. Mr. Flemming testified as well that he was hanging out with Mr. Burke and Mr. McIntosh and the others before the shooting, both of whom he knew previously. Mr. Prentice testified that he too knew Mr. McIntosh as "Daffy," and was friends with Mr. Burke. He recalled that on that night, he was with Mr. Burke, Mr. McIntosh, and others as they were talking and gambling in Kennedy Community. He saw Defendant J. Browne's vehicle come toward them and a gunman came out firing shots directly at them. In fact, he testified that the gunmen continued firing shots at the two bodies on the ground.

 Through these witnesses' testimony, the People presented evidence that Mr. McIntosh and Mr. Burke were alive and congregating with friends before the occupants in the vehicle began shooting at the group. After which, Mr. McIntosh and Mr. Burke were left lying on the ground as a result of receiving gunshot wounds. Mr. Burke's mother testified that when she arrived at the Kennedy Community, her son was not alive. Although these witnesses were not medical experts, and assuming *arguendo* that the death certificates were somehow invalid, the jury still had sufficient evidence to reach the same conclusion that the death certificates provided — that Mr. Burke and Mr. McIntosh died as a result of multiple gunshot wounds. The evidence presented supported a finding that both deaths occurred as a result of a shooting that occurred on December 25, 2007 in the Kennedy Community, and no other cause of death to the contrary has been presented by Defendants. Moreover, the nature of the deaths of Mr. Burke and Mr. McIntosh were not so obscure that the jury could not make reasonable inferences based on the facts presented to them.[10]

 " 'It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility

---

[10] *See State v. Wilson*, 280 N.C. 674, 680, 187 S.E.2d 22 (1972) ("Observation of a deceased person . . . is not so rare an occurrence as to render a non-expert incompetent to testify as to the fact of death in a particular instance. While it is the usual and better practice in a prosecution for homicide to offer medical testimony as to both the fact of death and the cause of it, even the cause of death may be established by non-expert testimony when the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that an observed would [sic] was mortal in character.").

of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts.' " *United States v. Rockwell*, 781 F.2d 985, 990 (3rd Cir. 1986) (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S. Ct. 409, 88 L. Ed. 520 (1944)). Whether the Court itself believes the evidence at trial is of no issue, as the question remains whether the evidence presented, in the light most favorable to the People, established guilt beyond a reasonable doubt. The Court finds in the affirmative — that the jury had sufficient evidence, without contradiction, from which to have reasonably drawn their conclusions about the deaths of Mr. Burke and Mr. McIntosh. The evidence was sufficient to allow the jury to reach fair and impartial verdict that Defendants' committed the crime of first degree murder. Accordingly, this Court is compelled to deny Defendants' Motion for Judgment of Acquittal on this basis.

### 2. Motion for New Trial

Defendants argue that the People did not produce sufficient evidence to sustain Defendants' convictions, and therefore, a new trial should be granted. "Unlike an insufficiency of the evidence claim, when [the court] evaluates [a motion for new trial] it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Only when the Court "believes that there is a serious danger that a miscarriage of justice has occurred" can it disturb the jury's verdict and order a new trial. *See Silveus*, 542 F.3d at 1004-05.

*The Court's Denial of Defendants' Motion to Suppress Did Not Prejudice Defendants Warranting a New Trial*

On April 28, 2008, Defendant J. Browne filed a Motion to Suppress Evidence, in which Defendants Melendez and M. Browne joined. The Court denied the Motion on July 22, 2008. Defendants challenge the Court's denial of their Motion asserting a previous argument that there was no probable cause to seize Defendant J. Browne's vehicle before a valid search warrant was issued, and the admittance of the evidence at trial prejudiced his ability to defend himself. In deciding the Defendants' Motion to Suppress, the Court analyzed the legality of search and seizures as it pertained to automobiles under the Fourth Amendment to the United States Constitution. The Court noted that whether there is probable cause for a seizure hinges on a test of

85

reasonableness of the seizure under the circumstances. And, further " 'each case must be decided on its own facts.' " (Order, July 22, 2008, pg. 9) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 509-10, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)). Here, the Court found that statements of two of the victims and other persons, named and unnamed, pointed the police in one direction, which was that Defendant J. Browne was involved in the shootings and he was driving the vehicle identified as belonging to him or a woman he was in a relationship with. The Court found that using "a commonsense, practical" approach to the issue of probable cause supported the seizure of Defendant J. Browne's vehicle. *Id.* at 11 (citing *United States v. Brown*, 448 F. 3d 239, (3d Cir. 2006)). Under the new trial standard, this Court does not find that Defendants were prejudiced by the admittance of the seized evidence nor was there a miscarriage of justice that warrants a new trial.

### The Court's Denial of Defendants' Request to Exclude Certain Statements Made by Defendant M. Browne Did Not Prejudice Defendants

Defendants argue that the Court previously granted a Motion in Limine on April 21, 2009 to exclude the February 4, 2008 statement of Defendant M. Browne, but reversed itself and allowed the statement to be admitted at trial.[11] On September 22, 2008, Defendant M. Browne filed a Motion to Suppress both written statements she gave to police. She asserted that the statements were obtained in violation of her Fifth Amendment right to counsel. After a hearing on December 5, 2008, the Court issued an Order on December 29, 2008 granting the Motion in part and denying it in part. With respect to the February 4, 2008 statement,[12] the Court found that Defendant M. Browne did invoke a limited right to counsel by stating to police that she would speak about herself without an attorney but she would *not* speak about her husband, Defendant J. Browne. The Court found that the last question asked in the February 4, 2008 statement explicitly referred to Defendant J. Browne, and therefore the Court suppressed the question and the answer. Accordingly, the

---

[11] The Court believes that Defendants are mistaken. The Court granted a Motion in Limine on April 24, 2009 regarding the testimony of Solomon M. Fulero. On December 29, 2008, the Court entered an Order regarding the instant issue.

[12] This statement contained six questions and six answers.

Motion was granted as to question and answer six, and denied as to the other five questions and answers. At trial, on September 22, 2009, the People moved to admit the February 4, 2008 statement without question and answer six. Defendant M. Browne's Counsel asserted "no objection," and the Court admitted the statement. (Trial Tr. vol. Ill, 102, Sept. 15, 2009).

 Defendants now argue that the February 4, 2008 statement is violative of the Sixth Amendment's Confrontation Clause. First, Defendants quote the sixth question and answer, and contend that it is "powerfully incriminating." However so, that question and answer was excluded pursuant to the Court's December 29, 2008 Order. Defendant M. Browne's statement that was admitted did not include the sixth question and answer. Consequently, Defendants' arguments that Defendant M. Browne's statement stains Defendants or suggests collusion are unlikely. As a result, this Court finds no basis for a new trial.

### The Court's Admission of the Death Certificates Prepared by Dr. D'Michelle DuPre Did Not Prejudice Defendants

As discussed previously, Defendants have failed to show that the death certificates are invalid because Dr. DuPre was not licensed to practice medicine in the Virgin Islands. Likewise, Defendants, although not required to present any evidence, did not present contradictory evidence that Mr. McIntosh and/or Mr. Burke died of causes other than multiple gunshot wounds. Consequently, the Court finds that Defendants' contentions are unpersuasive and warrant no further discussion.

### The Court Did Not Err in Denying the Defense the Opportunity to Call Certain Defense Witnesses

 Defendants argue that they sought to call rebuttal witnesses (namely, Dr. Thelma Watson, Rolando Huertas, Attorney Patricia Schrader-Cooke, and Assorted 9-1-1 Dispatchers) to refute the People's witnesses and evidence, but their requests were denied. Defendants appear to be making an inference based on the Court's general statement that witnesses not presented to the jury for *voir dire* would not be allowed to testify. It has been long recognized that trial courts have inherent authority to manage criminal proceedings before them. *See generally Carlisle v. United States*, 517 U.S. 416, 451, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996); *United States v. Wilson*, 421 U.S. 309, 319, 95 S. Ct. 1802,

44 L. Ed. 2d 186 (1975). These contentions that Defense requests were denied, particularly as to Dr. Watson and the "9-1-1 Dispatchers," are not supported by the record.

At the onset, Defendants arguments as to unnamed and unidentified "9-1-1 Dispatchers" must be dismissed as unfounded. The record does not support any attempt by Defendants to name these 9-1-1 Dispatchers, and present them as potential witnesses before the jury during the jury selection process. The Court is baffled at how Defendants propose that these unidentified witnesses could have been allowed to testify when they were neither named nor identified.

Regarding Dr. Watson, Defendants contend that she was expected to testify about Dr. DuPre's lack of qualifications and lack of authority to sign the death certificates. During a sidebar discussion with Counsel on September 22, 2009, the Court stated that it would entertain testimony outside of the hearing of the jury to make the determination on whether the death certificates of Mr. McIntosh and Mr. Burke were invalid because Dr. DuPre was not licensed and/or not authorized to sign the death certificates. The Court noted that the Virgin Islands Code allows the Department to maintain death statistics and the Rules of Evidence permits admittance of the death certificates. Yet, the Court stated that Defendants would be permitted to present evidence to the contrary to refute the admittance.[13] At that point, Defense Counsel asserted that he would have his staff contact "the witness"[14] and presumably would make a determination on whether Defendants would renew their request to have the particular witness testify. The Court has no record that the Defendants did indeed bring the matter up for further discussion. Accordingly, there was no error as it regards to Dr. Watson.

 As it pertains to Atty. Schrader-Cooke, Defendants indicate that they sought to call her to rebut portions of the testimony of her client, Edwin Estien. During the original request for Atty. Schrader-Cooke to testify, Defendant J. Browne argued that she was being called to clarify certain issues and not to invade attorney/client privilege. The Court determined that because of Atty. Schrader-Cooke's current representation

---

[13] The People objected to the testimony of any witnesses that were not on the witness list, and not presented to the jury, and further to any witness not qualified as an expert.

[14] The record does not indicate that the witness to which Defendants were referring to was mentioned by name.

of Mr. Estien before the District Court of the Virgin Islands, and her expected testimony regarding Mr. Estien, it was inappropriate to allow Atty. Schrader-Cooke to testify. The Court also noted that she was not announced as a potential witness before the jury during the selection process. Defendants knew Mr. Estien may have been called as a witness and could have at minimum listed Atty. Schrader-Cooke on their witness list for viewing before the jury during the selection process. For those reasons, the Court did not allow Atty. Schrader-Cooke to be called as a witness. The Court finds no error regarding this determination.

██ As to Mr. Huertas, Defendants argue that his testimony was expected to refute that of Mr. Estien as well as establish prior confrontations that Marsela and/or Martika Jarvis had with Defendant J. Browne. On September 22, 2009, after the discussion about Mr. Huertas' proposed testimony, the Court found that it was inappropriate to allow Mr. Huertas to testify for several reasons. First, the Court noted that the proposed testimony was based on discussions Mr. Huertas had with Mr. Estien, and were hearsay.[15] Second, that the proposed testimony entailed vouching for Defendant J. Browne and was essentially character testimony as to Defendant J. Browne, therefore there was no reason why the Defendants could not have listed Mr. Huertas as a potential witness. Lastly, Mr. Huertas was not on the Defendants' witness list and was not presented to the jury during the selection process. For those reasons, the Court found the proposed testimony was inappropriate, and finds no reason to disturb this ruling.

### The Court Did Not Err in Denying Defendants' Motion for Change of Venue

On March 27, 2008, Defendant J. Browne moved for a change of venue. Defendant cited numerous articles from local newspapers, and requested that Defendant be tried in the Division of St. Thomas and St. John to assure a fair trial since Defendant feared the pretrial publicity was

---

[15] Rule 801 of the Federal Rules of Evidence defines hear sayas "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

inflammatory. The Court initially granted the Motion, but then vacated it on June 5, 2008 after the People moved to reconsider.[16]

Defendants now aver that the Court erred in denying Defendant's Motion for a Change of Venue, which severely prejudiced Defendants warranting a new trial. Defendants' argument is primarily based on what they describe as "public outrage" directed at Defendant J. Browne as his status at the time was a police officer charged with committing heinous crimes. Defendants argue that this case received overwhelming media coverage and such pretrial publicity was prejudicial and "highly inflammatory." As a result, Defendants argue that Defendants did not receive a fair trial and request a new trial. The People assert that the Court denied the Motion without prejudice, and further stated in its Order "[i]f *voir dire* of the jury panel reveals the existence of a widespread prejudice such as would deny the Defendants a fair trial, the Court may revisit the issue of a transfer." (Order, June 5, 2008, pg. 3). The Court noted that the media articles Defendants submitted to the Court "objectively reported] on matters that are by their nature of community interest." *Id.* The Court did not find that at that stage of the proceeding the case warranted a transfer between divisions. Further, the Court indeed denied the Motion *without prejudice* and left the door open for Defendants to revisit the issue should they have felt it necessary. The record reflects that the transfer or change of venue issue was not raised again after the Court's June 5, 2008 ruling.

Moreover, as it relates to pretrial publicity, the United States Supreme Court has explained: " '[t]he relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant.' " *Mu'Min v. Virginia*, 500 U.S. 415, 430, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984)). Additionally, "answers to questions about content alone, which reveal that a juror remembered facts

---

[16] In an Order entered on April 10, 2008, the Court directed the People to respond to Defense's Motions for Severance and Change of Venue by April 18, 2008. When the People failed to file its responses, the Court entered an Order, on April 29, 2008, granting the Motion for Change of Venue and indicating that no oppositions were filed by the People and Defendant's arguments were meritorious. The People filed an Expedited Motion to Reconsider on April 29, 2008, asserting miscommunication issues, which resulted in their responses not being timely filed before the Court until April 28, 2008.

about the case, would not be sufficient to disqualify a juror. 'It is not required . . . that the jurors be totally ignorant of the facts and issues involved.' " *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751(1961).

 Here, the Court asked the jury pool a myriad of questions to ascertain the effect, if any, pretrial publicity or media information had on them. Several were excused on this basis. The Court further inquired as to those who had some knowledge, whether they could still be fair and impartial and render a verdict based solely upon the evidence presented to them and the instructions given by the Court. Many asserted they could, and the Court continued the *voir dire*. Defendants made no challenges to the *voir dire* process then, nor do they now. Therefore, the Court rejects Defendants' argument that they were severely prejudiced by pretrial publicity warranting a new trial.

### Defendants Were Not Prejudiced by Disclosures Failed to be Made by Two Jurors

 "To obtain a new trial based on a juror's untruthful response to a voir dire inquiry, 'a party must first demonstrate that [the] juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.' " *Virgin Islands v. Belardo*, 385 Fed. Appx. 149, 153 (3d Cir. 2010) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984)).

Defendants contend that two jurors failed to divulge facts, which if disclosed would have resulted in defense challenges for cause. They argue that Juror #5[17] (formerly Juror #148 for purposes of jury selection), although indicating that she was related to a person in law enforcement, "failed to provide further information, as requested, regarding how this law enforcement personnel was related to her." (Memo, in Supp. Def.'s Mot. New Trial, 18.) Defendants' contentions are unfounded. Defendants failed to state when Juror #5 was asked to provide further information and the circumstances in which she refused to provide it. Additionally, Defendants have not demonstrated that Juror #5 failed to honestly answer

---

[17] The Court, in an effort to protect and keep confidential the identity of the juror, refers to the juror by assigned number.

a material question during *voir dire*. Juror #5 stated during *voir dire* that her brother-in-law was a lieutenant with the Virgin Islands Police Department when questioned whether anyone on the panel had a family member or a friend who was previously employed or was currently employed with departments concerned with criminal prosecution and law enforcement. Defendants failed to inquire further of her or to challenge her for cause. It follows then that Defendants claims as to Juror #5 are rejected.

As it relates to Juror #11[18] (formerly Juror #137 for purposes of jury selection), Defendants assert that she failed to reveal that her brother is a Virgin Islands' police officer, her niece is a marshal for the Superior Court, and her sister is a corrections officer at the Bureau of Corrections. Defendants are mistaken as to their representations. Juror #11 did indicate all of the above mentioned relationships. Juror #11 was further asked after making these representations whether despite of these relationships, she could be fair and impartial in rendering a verdict in this case, and whether she could base that decision only on the evidence presented in this courtroom. She answered in the affirmative to both questions. Therefore, Defendants have failed to prove dishonesty as to Juror #11. The Court rejects Defendants arguments regarding juror dishonesty as to these two jurors, and cannot find a new trial is warranted on these claims.

After considering Defendants arguments for anew trial, the Court finds that the evidence presented in this case does not weigh heavily against the verdict and is not insufficient to sustain a finding of guilt on all counts. The jury's guilty verdict was supported by the weight of the evidence and the Court finds nothing on record that causes it to question the credibility of the witnesses. The Court finds that there has been no miscarriage of justice and therefore, finds that Defendants' Motion for a New Trial shall be denied.

### B. Defendant Marcela Browne

### 1. Motion to Dismiss Count One of the Information

██ Defendant M. Browne contends that Count One of the original Complaint filed against her, on January 31, 2008, should be dismissed for

---

[18] The Court, in an effort to protect and keep confidential the identity of the juror, refers to the juror by assigned number.

failing to state an offense. Defendant[19] has overlooked the fact that a Superseding Information was filed on April 18, 2008. The Superseding Information replaces the original Information. Defendant was arraigned on the charges in the Superseding Information on June 18, 2008. For all purposes during trial, the Superseding Information was used from *voir dire* to the reading of the final jury instructions. *See, e.g., United States v. Friedman*, 649 F.2d 199, 202 (3d Cir. 1981) (noting that whether the original indictment was formally dismissed or not, it was clear that the prosecution was proceeding with the superseding indictment). Therefore, Defendant was aware of the charges that she faced in the Superseding Information. Any challenges at this juncture must be made regarding the Superseding Information. Since Defendant has failed to raise any arguments as to the Superseding Information, her Motion must be denied.

### 2. Motion for Judgment of Acquittal

Defendant argues that the People failed to prove that she had knowledge of the crimes her husband and brother were alleged to have committed. Specifically, Defendant avers that the People provided no direct or circumstantial evidence that she knew that her husband and brother were alleged to commit murder and assault at the time she was alleged to have made false or misleading statements to the police. The People counter that Defendant knew that a murder had been committed when she was interviewed on December 25th. They draw attention to the first line of the statement, which reads: "This statement is given by Marcela Browne in reference to a reported homicide which occurred on December 25, 2007 in the vicinity of JFK Housing development. . . ." (*See* People's Ex. 22, Statement of M. Browne). The People contend that the jury could have reasonably concluded that Defendant's signature on each page of the statement indicated that she knew she was answering questions regarding her husband's and brother's involvement in a murder that had occurred. Further, the People assert that Defendant acknowledged in her February 4, 2008 statement that her statement as to her whereabouts on the morning of the 25th were untrue. The People argue that the jury could have reasonably inferred that these false statements

---

[19] The use of "Defendant" in Section B of the Discussion refers only to Defendant M. Browne.

were intended to create an alibi for Defendants J. Browne and Melendez, and hinder and prevent their apprehension.

First, to sustain her heavy burden in challenging the sufficiency of the evidence in the case against her, the Court views the evidence in the light most favorable to the People to determine whether the jury could have found Defendant guilty beyond a reasonable doubt based on the evidence presented at trial. *See Anderson*, 108 F.3d at 481; *see also Stevens*, 52 V.I. at 305. Second, to find Defendant guilty of accessory after the fact, the jury must have found beyond a reasonable doubt (1) that Defendant knew that various crimes were committed[20]; 2) that Defendant assisted the offenders, Defendants J. Browne and Melendez by providing misleading information to the police and; (3) that Defendant intended to hinder or prevent the offenders' apprehension, trial or punishment. *See* 14 V.I.C. § 12(a). (*See also* Trial Tr. vol. XII, 213-14, Sept. 25, 2009).

The jury heard testimony from Detective Richard Matthews, who took Defendant's initial statement on December 25th. The People are correct that the statement, signed and dated by Defendant on each page, states that it was given in reference to a homicide, which occurred on December 25, 2007 in the Kennedy Community. Defendant's argument that she did not know that her husband and brother were alleged to have committed murder and assault is contrary to the evidence presented at trial. Defendant was asked specific questions regarding both her husband and her brother and her knowledge of an incident occurring in the Kennedy Community.

In the statement, Defendant stated that between the hours of 1:00 a.m. and 2:00 a.m. on December 25th, she was driving her 2007 four-door, gray or silver, Hyundai Brio in areas such as Christiansted, Gateway, and Sunny Isle. She stated that she left her residence about "twelvish a.m." (*See* People's Ex. 22, Statement of M. Browne). When asked if she observed her husband sleeping at that time, she answered no, that he had just reached home, and had turned on the television. Again, Defendant was asked if she knew if her husband was at their residence between the hours of 1:00 a.m. and 2:00 a.m., and she answered "I don't know, I left him and my brother with the children." (*See* People's Ex. 22, Statement

---

[20] Namely, the charges of murder in the first degree, attempted murder in the first degree, and assault in the third degree.

of M. Browne). She additionally stated that she left her vehicle in the Harbor View Housing Community because it would not reverse.

In Defendant's second statement on February 4, 2008, also signed and dated by Defendant, she acknowledged that her previous statement was not true. The question was asked: "In your statement you stated that you went with the vehicle from you [sic] house around 'Twelvish' was that a true statement?" Defendant answered "No." (*See* People's Ex. 22, Statement of M. Browne). In addition to contradictory nature of this evidence, testimony of Lebbeus Gittens, Divi· Carina Bay Casino's surveillance manager, and video footage at the casino revealed that at 12:39 a.m., Defendants J. Browne and Melendez and another male were at the casino.

Testimony of Veronica Napoleon also revealed that on the morning of the 25th, she heard what sounded like a speeding car drive into Harbor View Housing Community. She looked outside and saw a four-door, gray vehicle. Ms. Napoleon testified that she saw a "short, black, rasta dude" with medium locks exit the vehicle and run towards building no. 11. (*See* Trial Tr. vol.IV, 11, Sept. 16, 2009). She stated that later on the police arrived with a wrecker and the vehicle was towed.

 Therefore, the jury could have reasonably inferred that Defendant M. Browne knew that various crimes had been committed, assisted Defendants J. Browne and Melendez by providing misleading information to the police, and intended to hinder or prevent their apprehension, trial, or punishment. The Court finds that the evidence presented to the jury, in the light most favorable to the People, was sufficient to establish guilt beyond a reasonable doubt as to the crime of accessory after the fact. Accordingly, this Court is obligated to deny Defendant's Motion for Judgment of Acquittal.

## III. CONCLUSION

For the reasons stated herein, the Court finds that, viewing the evidence in the light most favorable to the People, there was sufficient evidence in this case to find Defendants, J. Browne, L. Melendez, and M. Browne, guilty beyond a reasonable doubt for the crimes charged. Accordingly, Defendants' Motions for Judgment of Acquittal shall be denied. The Court also finds that the jury verdict was not contrary to the weight of the evidence, and finds no evidence of a miscarriage of justice because

Defendants have been wrongly convicted. As such, Defendants' Motions for a New Trial shall be denied. An appropriate Order of even date follows.