# DENZIL IVAN STEVENS, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Crim. No. 2007-126

Supreme Court of the Virgin Islands

September 15, 2009

295

BRUCE W. STREIBICH, ESQ., Law Offices of Bruce W. Streibich, St. Thomas, USVI, *Attorney for Appellant.*

TIFFANY V. ROBINSON, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and MOORE, *Designated Justice.*[1]

---

[1] Associate Justice Ive Arlington Swan has been recused from this matter. The Honorable Thomas K. Moore sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

## OPINION OF THE COURT

(September 15, 2009)

CABRET, J. Jahlil Ward was shot in a drive-by shooting in Cruz Bay, St. John. The People charged Denzil Stevens with the shooting, and following a trial, a jury found him guilty. Stevens filed this appeal challenging the sufficiency of the evidence and the trial court's denial of his motion for a new trial in which he challenged the weight of the evidence supporting his conviction. For the reasons which follow, Stevens's convictions will be affirmed in part and reversed in part.

## I. FACTS AND PROCEDURAL BACKGROUND

The shooting occurred on April 7, 2006. During the early evening hours of that day Ward shot an individual named Darcey Thomas. Later that evening, at approximately 11:30 p.m., Ward was standing in front of a bar located in Cruz Bay talking on his cell phone. Ward observed a blue, Chevrolet van drive around the block and stop in front of him. A sliding door on the driver's side of the van opened, and an individual, whom Ward later identified as Stevens, appeared in the open doorway with a shotgun. After a brief verbal exchange between Stevens and Ward, Ward turned and started to walk away. As Ward walked, Stevens shot him in the lower back. Before falling to the ground, Ward turned around and watched as Stevens escaped from the scene in the van. Ward was transported to the hospital where he was treated for his gunshot wounds.

On April 10, 2006, while Ward was recovering in the hospital, he gave a statement to police detectives investigating the shooting. In the statement, Ward identified Stevens as the shooter, and he stated that the van was stopped in front of him for two to three minutes before Stevens shot him. In addition to recounting the events surrounding the shooting, Ward stated that he recognized three people in the van: Stevens, whom he knew as "Skelly," "Raphel," who was driving, and "Mickeal," who was sitting in the front passenger seat. (J.A. II at 446.) According to Ward, the van belonged to Raphel's mother. Although Ward did not know the last names of the three individuals in the van, he knew each of them personally and testified at trial that Raphel and Mickeal were his cousins.

In the days that followed, Police Detective Aaron Krigger Sr. interviewed the three individuals Ward said were in the van. Detective Krigger interviewed Mickeal, who was identified as Mekel Blash, on

297

April 15, 2006. Detective Krigger memorialized Blash's interview in a six-page, question and answer, type-written statement. Blash stated that Thomas, the victim of Ward's earlier shooting, was his good friend and cousin. Blash acknowledged being in the van when the shooting occurred. And, while early in the statement Blash stated that he did not know the shooter, at the end of the statement Blash was asked: "Do you know who the person in the rear of the van was yes [sic]?" (J.A. II at 456.) According to the statement, Blash answered: "This guy they call Skelly, I know of him but not personally." (J.A. II at 456.) Inexplicably, there are two pages in the statement marked as page five and both are identical for the first twelve questions and answers. Although the first page five ends after the twelfth answer, the second page five contains an additional four questions and answers during which Blash ostensibly identifies Skelly as the person in the rear of the van. While the bottom of each page is purportedly signed and dated by Blash, the signatures on both pages marked page five are noticeably different than the signatures on the first four pages. In addition to this peculiarity, the cover sheet indicates that the interview took place at 6:20 p.m., but page three of the statement indicates that the interview ended at 1:27 p.m. When questioned about the latter discrepancy at trial, Detective Krigger testified that he made "a mistake." (J.A. I at 188.)

Detective Krigger interviewed Raphel, who was identified as Ralph Titre, on April 16, 2006. In his statement, which was also reduced to type-written, question and answer form, Titre acknowledged driving the van and stated that both Blash and Stevens were in the van. Although Titre did not see the gun, he stated that after the van door was opened, Stevens jumped out and "fired the shot." (J.A.II at 427.) Each page of the statement was signed by Titre, and also by his father, who was present during the interview. While the cover page of the four-page statement indicates that the statement was taken at 10:37 p.m. on April 16, 2006, page three indicates that the interview ended at 1:27 p.m. on April 15, 2006.

Detective Krigger interviewed Stevens on April 15, 2006. Stevens denied shooting Ward, stated that he did not know either Titre or Blash, and insisted that he was at home in Coral Bay at the time of the shooting.

Based on evidence obtained during the investigation, Stevens was arrested and charged with nine crimes: attempted first degree murder[2] ("Count One"); possessing an unlicensed firearm during the commission of a crime of violence, attempted first degree murder[3] ("Count Two"); first degree assault with intent to commit murder[4] ("Count Three"); possessing an unlicensed firearm during the commission of a crime of violence, the Count Three first degree assault[5] ("Count Four"); first degree assault with intent to commit rape, sodomy, mayhem, robbery or larceny[6] ("Count Five"); possessing an unlicensed firearm during the commission of a crime of violence, the Count Five first degree assault[7] ("Count Six"); mayhem[8] ("Count Seven"); possessing an unlicensed firearm during the commission of a crime of violence mayhem[9] ("Count Eight"); and unauthorized possession of ammunition[10] ("Count Nine").

At trial, Ward again identified Stevens as the individual who shot him, and Ward stated that he had known Stevens for approximately four months before the shooting. As a motive for the shooting, Ward explained that Thomas and Stevens were friends, and "maybe because I shoot [Thomas, Stevens] came back and shoot [sic] me." (J.A. I at 82.) Ward described to the jury what happened when Stevens shot him in much the same manner as he had done in his police statement. Ward testified that he saw the blue van drive around the block before it stopped in front of him. Inside the van were Stevens, Blash and Titre. The rear sliding door on the driver's side opened, and Stevens appeared holding a shotgun. According to Ward's testimony, the van was stopped in front of him for four or five minutes while he and Stevens exchanged words. As Ward turned to walk away, he heard the gunshot that hit him. Ward stated that, as a result of the shooting, he lost a kidney and that he still had several pellets in him that the doctors could not remove.

---

[2] *See* V.I. CODE ANN. tit. 14, §§ 921, 922(a)(1), 331 (1996 and Supp. 2008).

[3] *See* 14 V.I.C. § 2253(a) (1996 and Supp. 2008); 23 V.I.C. § 451(e) (Supp. 2008).

[4] *See* 14 V.I.C. § 295(1) (1996).

[5] *See* 14 V.I.C. § 2253(a).

[6] *See* 14 V.I.C. § 295(3).

[7] *See* 14 V.I.C. § 2253(a).

[8] *See* 14 V.I.C. § 1341(a)(2) (1996).

[9] *See* 14 V.I.C. § 2253(a).

[10] *See* 14 V.I.C. § 2256(a) (Supp. 2008).

The People also called Blash as a witness at trial. Blash stated that on the evening of the shooting, Titre, whom he had known for about ten years, picked him up in either a blue or black van "[t]o drive around the block" in Cruz Bay. (J.A. I at 209-10.) According to Blash, he jumped in the front, passenger seat of the van, and there was another individual seated in the back. Blash testified that he did not recognize or talk to the person in the back seat, who was wearing a "hoodie." (J.A. I at 211.) After Titre drove around the block, he stopped the van in front of the bar where Ward was standing. Blash stated that the person in the back of the van then fired a gun, and Titre drove away. Although Blash testified that he knew Stevens, he stated that he did not know if the person who fired the shot was Stevens, because "[t]he person had on a hoodie." (J.A. I at 215.) Blash denied that he told Detective Krigger that Stevens was the person in the back of the van who shot Ward. Blash further denied that he signed the bottom of each page of the type-written statement attributed to him.

Titre also testified at trial, but his testimony was fraught with contradiction and was largely incomprehensible. While Titre acknowledged that his signature and his father's signature appeared on his statement to police, he also testified that his signature did not look like his handwriting and that he did not remember being with his father and Detective Krigger at the police station when he provided the statement. In fact, Titre testified that virtually all of the questions and answers reflected in the statement were not asked or answered in the manner reflected on the statement. In addition, while at one point Titre testified that he did not remember driving a van on the night of the shooting, at another point he acknowledged driving his mother's van that night, but he denied that the van was blue. While Titre testified that he was not in Cruz Bay on the night of the shooting and that he did not know Stevens, he also acknowledged hearing shots fired when he was in Cruz Bay that night and telling Detective Krigger in his statement that, on the night of the shooting he picked up Stevens in "Cruz Bay, at the Youth Center." (J.A. I at 106.) Similarly, later in his testimony, Titre acknowledged that Stevens was with him in his van, in Cruz Bay, on April 7, 2006, the day of the shooting. When asked if saw the person he picked up at the Youth Center in the courtroom, Titre stated: "I don't remember how he look [sic]." (J.A. I at 107.) Titre's memory while on the witness stand was so faulty that, when asked, he could not even remember what grade in school he had completed.

Detective Krigger testified that the questions and answers reflected on Titre's statement were accurate and that Titre's mother and father were present at the interview. Detective Krigger further stated that, following Titre's interview, Titre positively identified Stevens as the shooter from a photo array of six individuals. The photo array, which was admitted into evidence at trial, contains the initials "R.T." on one of the six photographs. (J.A.II at 431.) Detective Krigger testified that Titre initialed the photograph when he identified Stevens.

The People's final witness was the physician who treated Ward in the hospital. Contrary to Ward's testimony that he lost a kidney as a result of the shooting, the treating physician testified that he merely "repaired" Ward's kidney (J.A.II at 248) and that it was neither destroyed nor disabled. Likewise, Ward's "discharge summary" from the hospital indicated a "repair of left kidney laceration." (J.A. I at 168.) In addition to the foregoing testimony, the People also presented uncontroverted evidence that Stevens he did not have a license to carry a firearm or ammunition on April 7, 2006.

Following the People's presentation of evidence, Stevens moved for a judgment of acquittal on all the counts with which he was charged. While the trial court denied the motion with regard to Counts One through Four and Count Nine, it granted a judgment of acquittal on Counts Five through Count Eight, the charges based on the allegations that Stevens committed mayhem.[11]

In his defense, Stevens presented evidence of an alibi. Specifically, Stevens and three other witnesses all testified that Stevens was at a friend's house in Coral Bay, St. John throughout the day and night of the shooting. The first witness, Michael Muller, testified that he was with Stevens and another individual, Saihinly Tongue, at Tongue's home in Coral Bay from mid-afternoon until approximately 10:30 p.m. to 11:00 p.m. on the evening of the shooting. However, on cross-examination Muller could not explain how he recalled that he was with Stevens on the particular night of the shooting as opposed to the days immediately

---

[11] Under the Virgin Islands Code, a person commits mayhem when he "willfully and with intent to commit a felony or to injure, disfigure or disable, inflicts upon the person of another any injury which . . . destroys or disables any member or organ of his body . . . ." 14 V.I.C. § 1341(a)(2). The trial court granted Stevens' motion for judgment of acquittal because there was no evidence that any member or organ of Ward's body was destroyed or disabled.

preceding or following that day. Muller further testified that he did not know if Stevens left Tongue's home later in the evening and that it takes approximately fifteen minutes to drive to Cruz Bay from Coral Bay.

Tongue was Stevens's second alibi witness. Tongue testified that Stevens was living with him for a couple of months before Stevens was arrested. While Tongue had difficulty recalling anything about the specific day Ward was shot, after repeated questioning by defense counsel on redirect examination, he testified that Muller left his house "a little after ten . . . . And then a little after that, like probably half an hour after, [Stevens] fell asleep on the couch. And then a little after that I fell asleep." (J.A.II at 292.)

Stevens's third alibi witness was Anwar Clendinen. Clendinen testified that he was with Stevens at Tongue's house early in the day, but left for Cruz Bay later in the afternoon. Clendinen stated that he spent the remainder of the day in Cruz Bay and he did not see Stevens there. According to Clendinen, he was approximately twenty feet away from Ward when Ward was shot, and five minutes after the shooting he left to go back to Coral Bay. Although Clendinen does not have a car, his friend drove him to Coral Bay. According to Clendinen, the drive took eight to ten minutes, and he went directly to where Stevens was staying "[t]o tell them all what had happened." (J.A.II at 298.) When Clendinen arrived at Tongue's house "it was dark" and he "called out for them." (J.A.II at 298.) According to Clendinen, Stevens "came out. Then I went inside the house and chill [sic]." (J.A.II at 299.)

Stevens was the final witness to testify for the defense. Consistent with his alibi witnesses, Stevens testified that he stayed home with Tongue the entire day on April 7, 2006. Stevens stated that Muller was with him until 10:30 p.m. or 11:00 p.m. and that shortly after Muller left, he fell asleep. Stevens stated that he was awoken around midnight when he heard Clendinen calling his name. Stevens denied knowing Blash or Titre before he was arrested. In fact, Stevens testified: "I do not recall seeing them, having a conversation with them, meeting them no place." (J.A.II at 317.) On rebuttal, Ward testified that Stevens, Blash and Titre were all friends.

The matter was submitted to the jury, but after only two hours of deliberations, the jurors sent a note to the trial judge stating that they were " 'unable to come to a verdict.' " (J.A. II at 392.) Upon conferring with counsel, and based on the fact that it was late in the day, the court sent the jury home and allowed them to return the following day to continue

deliberations. The jury ultimately found Stevens guilty of the five remaining counts.

Stevens again moved for a judgment of acquittal and also moved for a new trial. Stevens argued that the verdict was contrary to the weight of the evidence because neither Titre nor Blash identified him as the shooter in their trial testimony. Stevens further argued that Ward, who was the only witness to identify Stevens as the shooter at trial, was not credible because his testimony contained so many inconsistencies. The Superior Court denied both motions reasoning as follows:

> All of the matters raised by Defendant are questions of credibility. The jurors had before them substantial evidence and an ample basis upon which to discern the demeanor and manner of the witnesses and determine their credibility. Simply put, from the Court's observation and, apparently, that of the jury, both Titre and Blash appeared to be lying on the witness stand when they claimed a failure to recall certain details of the shooting (including, incredibly, the identity of a person who fired a shotgun from the back seat of the vehicle in which they were located) and accused the police of altering their statements. In contrast, Ward appeared certain and unwavering in his identification of Stevens as the perpetrator. Similarly, the alibi witnesses were impeached by inconsistencies in the versions of the events on the evening in question.

(J.A. I at 15.) The Superior Court subsequently sentenced Stevens to fifteen years incarceration for his conviction on Count One, attempted murder,[12] a concurrent fifteen years for his conviction on Count Two, possessing an unlicensed firearm during the attempted murder,[13] and a concurrent one year term of incarceration for his conviction on Count Nine, unauthorized possession of ammunition.

On appeal, Stevens asserts that the trial court erred in denying his motion for judgment of acquittal and motion for a new trial. He claims that the Superior Court applied the wrong standard in denying his motion for a new trial and that the evidence was insufficient to sustain his

---

[12] The court merged Count Three, first degree assault, with Count One.

[13] The court merged Count Four, possessing an unlicensed firearm during the first degree assault, with Count Two.

convictions. Specifically, Stevens contends that, in ruling on his motion for a new trial, the trial judge paid too much deference to the jury instead of "independently weighing evidence and considering credibility." (Appellant's Br. 12.) As he did below, Stevens points to several purported inconsistencies in Ward's testimony that he believes rendered the testimony wholly unbelievable. Given these inconsistencies, the fact that neither Blash nor Titre identified Stevens as the shooter at trial, the peculiarities in Blash's and Titre's written police statements, and the alibi evidence, Stevens argues that the Superior Court erred in denying his motions for judgment of acquittal and a new trial.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the Superior Court's judgment and commitment pursuant to title 4, section 32(a) of the Virgin Islands Code which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

In reviewing the Superior Court's denial of Steven's motion for judgment of acquittal based on the sufficiency of the evidence, "we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People. We will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. People*, 51 V.I. 396, 398 (V.I. 2009); *accord United States v. Silveus*, 542 F.3d 993, 1002, 50 V.I. 1101 (3d Cir. 2008) (ruling that an appellate court exercises "plenary review over a [trial] court's grant or denial of a motion for acquittal based on the sufficiency of the evidence, applying the same standard as the [trial] court.).

A motion for a new trial which challenges a conviction based on the weight of the evidence is governed by Rule 135 of the Rules of the Superior Court. Rule 135, like its federal counterpart, Rule 33 of the Federal Rules of Criminal Procedure, permits a trial court to grant a new trial in "the interest of justice." Given the similarity between the two rules, on appeal we review a denial of a motion for new trial under Rule 135 using the same standard as federal courts use in reviewing a denial of a motion for a new trial under Rule 33. We will not interfere with the Superior Court's ruling absent an abuse of discretion. *See Silveus*, 542 F.3d at 1005. (stating abuse of discretion standard for reviewing

denial of Rule 33 motion (citing *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002))). "Such motions are not favored and should be 'granted sparingly and only in exceptional cases.' " *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

## III. DISCUSSION

 Stevens contends that the Superior Court erred in denying both his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.[14] While both of Stevens's motions test the evidence presented at trial, the Superior Court considers the motions under different standards. When the Superior Court considers a motion for judgment of acquittal, it views the evidence " 'in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.' " *Id.* at 1002 (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir.2002)); *accord* 3 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, *Federal Practice and Procedure* § 553 (West Update 2009). In comparison, the Superior Court plays a much more active role in considering a motion for a new trial based on the argument that the jury's verdict was against the weight of the evidence. Here, the Superior Court

> exercises its own judgment in assessing the Government's case. However, even if [the Superior Court] believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted.

*Silveus*, 542 F.3d at 1004-05 (citations and quotation marks omitted). Because the Superior Court must use its own judgment in considering the evidence, some older cases suggest that the court sits as a thirteenth juror. *See, e.g., Gov't of the V.I. v. Davis*, 35 V.I. 72, 85 (Terr. Ct. 1997) (citing *Gov't*

---

[14] Although Stevens cites to Rule 33 of the Federal Rules of Criminal Procedure in his brief, and we rely on cases discussing Rule 33 in our analysis, as stated above, Superior Court Rule 135, the local counterpart to Rule 33, governs a motion for a new trial in the Superior Court.

*of the V.I. v. Grant*, 19 V.I. 440 (Terr. Ct. 1983); *Gov't of the V.I. v. Leycock*, 19 V.I. 59, 62 (D.V.I. 1982)); *see also* WRIGHT & MILLER, *supra* at § 553

Stevens seizes on the language that the trial court sits as a thirteenth juror and argues that the court in the instant case "did not act as a 'thirteenth juror' independently weighing evidence and considering credibility. Rather, the Trial Court viewed the evidence from the vantage point of what the jury could reasonably conclude." (Appellant's Br. 15.)

■ As a threshold matter, Stevens has misplaced his insistence that the Superior Court should have acted as a thirteenth juror. While some older decisions of courts within this jurisdiction have relied on the principle that a trial court can weigh the evidence and consider the credibility of the witnesses as if it were sitting as a thirteenth juror, *see, e.g., Davis*, 35 V.I. at 85; *Grant*, 19 V.I. at 445, other decisions have patently rejected the notion that a trial court may simply reject a jury's verdict merely because the judge would have reached a different verdict. *See Gov't of the V.I. v. Commissiong*, 706 F. Supp. 1172, 1184 (D.V.I. 1989) (citing *United States v. Levy*, 694 F. Supp. 1136, 1144-45 (D.N.J. 1988)); *Gov't of the V.I. v. Baron*, 48 V.I. 88, 93 (V.I. Super. 2006). In addition, we are unaware of opinions from the Court of Appeals for the Third Circuit that adopt the "thirteenth juror" standard, and it appears that at least one other federal circuit court of appeals has expressly rejected the standard. *See United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir. 1986) (observing that "this court has emphatically stated that a trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result." (citations omitted)). While it remains the law that a trial court should weigh the evidence, a new trial should not be granted unless the court believes that there is " 'a serious danger . . . that an innocent person has been convicted.' " *Silveus*, 542 F.3d at 1005 (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)); *accord United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005). Accordingly, we conclude that the Superior Court did not abuse its discretion by failing to act as a thirteenth juror.

■ To the contrary, it is clear that the Superior Court applied the correct standard in denying Stevens's motion for a new trial. In its order, the Superior Court clearly articulated that it was exercising its own judgment in assessing the witnesses' credibility and weighing the evidence, stating: "from the Court's observation . . . both Titre and Blash appeared to be lying on the witness stand . . . . In contrast, Ward appeared certain and

unwavering in his identification of Stevens as the perpetrator. Similarly, the alibi witnesses were impeached by inconsistencies . . . ." (J.A. I at 15.) Thus, there is no merit in Stevens's assertion that the trial court applied the wrong standard in evaluating the evidence.

■ There is also no merit in Stevens's argument that he is entitled to a new trial because "Ward repeatedly lied under oath" (Appellant's Br. 17) and because Ward's testimony showed that he "has the traits of a compulsive liar." (Appellant's Br. 18.) In support of this assertion, Stevens cites to eight statements that Ward made at trial that Stevens believes were obvious lies. Initially, we note that all of the cited testimony concerns merely collateral matters and that Stevens does not directly challenge Ward's unequivocal testimony that Stevens was the shooter. Moreover, of the eight statements cited by Stevens, only one evidences any actual inconsistency in the evidence presented by the People. While Ward testified that he lost his kidney, it is clear from the treating physician's testimony that the Ward's kidney was not removed, but rather repaired. The other purported lies and inconsistencies are manufactured by Stevens upon construing certain inferences in the evidence in a light most favorable to his innocence. This is clearly not the standard under which the Superior Court was required to review the evidence. *See Silveus*, 542 F.3d at 1004-05.

■ There is likewise no merit in Stevens's assertion that the trial court was required to believe his alibi witnesses because they were not effectively impeached. Here again, Stevens is operating under the mistaken assumption that the Superior Court should have viewed the evidence in a light most favorable to his innocence. The Superior Court was required to exercise its own judgment in weighing the evidence, not engage in the fiction suggested by Stevens. Because it is clear that the Superior Court properly evaluated this evidence, and it did not present a serious danger that an innocent person was convicted, there was no abuse of discretion.

■ Stevens also claims that the peculiarities in the witness statements attributed to Blash and Titre should have raised a reasonable doubt in the authenticity of the statements.[15] The record shows, however, that both

---

[15] Although Stevens challenges the credibility of the statements on this ground, he does not challenge the admissibility of the evidence.

Blash and Titre were questioned extensively about the statements at trial. The Superior Court judge, who was able to personally view the demeanor of these witnesses, exercised his own judgment and found that "both Titre and Blash appeared to be lying on the witness stand when they . . . accused the police of altering their statements." (J.A. I. at 15.) Considering the numerous inconsistencies in the testimony of both Blash and Titre, the Superior Court did not abuse its discretion in discounting their testimony or rejecting Stevens's arguments about the authenticity of their statements.

■ Furthermore, it is clear that upon considering all the evidence, the Superior Court merely gave the greatest weight to Ward's unequivocal identification of Stevens as the shooter. Even if it were true, as asserted by the Stevens, that much of the People's evidence was laden with inconsistencies, the uncorroborated testimony of the victim would have been sufficient to sustain the convictions. *See Phipps v. Gov't of the V.I.,* 241 F. Supp. 2d 507, 511 (D.V.I. App. Div. 2003); *Lewis v. Gov't. of the V.I.,* 42 V.I. 175, 77 F. Supp. 2d 681, 684 (D.V.I. App. Div. 1999); *see also United States v. Perez,* 280 F.3d 318, 344 (3d Cir. 2002). Thus, Ward's identification of Stevens as the shooter, which was credited by the Superior Court, and obviously the jury as well, provided a sufficient basis to deny Stevens's challenge to the weight of the evidence.

■ For similar reasons, we find no merit in Stevens's assertion that the Superior Court erred in denying his motion for judgment of acquittal on Counts One through Four.[16] Indeed, "[b]ecause the power to grant a motion for a new trial is broader than the court's power to grant a motion for a judgment of acquittal, our determination that [Stevens is] not entitled to a new trial means that [he is] similarly not entitled to a judgment of acquittal." *Davis,* 397 F.3d at 181 (citing *United States v. Brennan,* 326 F.3d 176, 189 (3d Cir. 2003)).

■ Although Stevens's challenge to his conviction under Count Nine for unauthorized possession of ammunition is based on the same fallacious arguments he raised concerning his other convictions — Ward

---

[16] Count One (attempted first degree murder); Count Two (possessing an unlicensed firearm during the commission of a crime of violence, attempted first degree murder; Count Three (first degree assault with intent to commit murder); and Count Four (possessing an unlicensed firearm during the commission of a crime of violence, the Count Three first degree assault).

lacked credibility, the witness statements were suspect, and he had an alibi — there is another argument not raised by Stevens that requires reversal on this count. As this Court recently observed in *Smith*, 2009 V.I. Supreme LEXIS 27 at *12, to find a defendant guilty of this charge, "the jury would have to have found that he possessed ammunition without authorization." But Virgin Islands law does not establish a mechanism for authorizing possession of ammunition. *See id.*; *United States v. Daniel*, 49 V.I. 1169, 518 F.3d 205, 208 (2008). "Without any such mechanism, like the licensing process for possessing a firearm, *see* 23 V.I.C. § 455 (1993 & Supp. 2008), the People could not show that [Stevens] was not authorized to possess ammunition." *See Daniel*, 518 F.3d at 208-09. Under these circumstances, it is clear that the evidence was not sufficient to sustain Stevens' conviction on Count Nine.

While Stevens did not raise this argument in the Superior Court, and he has not raised it on appeal, " 'the failure to prove one of the essential elements of a crime is the type of fundamental error which may be noticed by an appellate court notwithstanding the defendant's failure to raise it in the [trial] court.' " *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997) (quoting *United States v. Zolicoffer*, 869 F.2d 771, 774 (3d Cir. 1989)); *accord United States v. Wright-Barker*, 784 F.2d 161 (3d Cir. 1986) (reviewed sufficiency of the evidence for plain error as it pertained to certain defendants even though those defendants did not preserve the issue below and did not raise it on appeal)), superseded on other grounds by statute, *United States v. Martinez-Hildago*, 28 V.I. 365, 993 F.2d 1052, 1056 (3d Cir. 1993). Like the Court of Appeals for the Third Circuit, we "believe that affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt 'affect[s] substantial rights,' and seriously impugns 'the fairness, integrity and public reputation of judicial proceedings.' " *Id.* (citing *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993)). Accordingly, although this Court does not, as a general rule, consider arguments not raised by the parties, Stevens's general challenge to the sufficiency of the evidence, coupled with the plain error before us, requires not only that we notice the error, but that we reverse his Count Nine conviction because of the error.

## IV. CONCLUSION

With the exception of Stevens's conviction for unauthorized possession of ammunition, we find no merit in his assertions that the Superior Court erred in denying either his motion for a new trial or his motion for judgment of acquittal. The Superior Court applied the correct standard in denying the motion for a new trial and did not abuse its discretion in finding that the weight of the evidence supported the jury's verdict. And, because the standard for granting a new trial based on the weight of the evidence is broader than for granting a motion for judgment of acquittal, we similarly conclude that the trial court did not err in denying Stevens's motion for judgment of acquittal on Counts One through Four. However, because the People failed to present any evidence that Stevens was not authorized to possess ammunition in contravention of Virgin Islands law, his conviction on that charge will be reversed.