**TRISTAN K. JOSEPH, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0132
Supreme Court of the Virgin Islands
December 23, 2013

339

KELE C. ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(December 23, 2013)

HODGE, Chief Justice. Appellant Tristan K. Joseph appeals from the Superior Court's November 29, 2012 Judgment and Commitment, which adjudicated him guilty of third-degree assault, one count of unauthorized possession of a firearm, one count of unauthorized use of a firearm during a third-degree assault, and reckless endangerment. For the reasons that follow, we reverse his third-degree assault and unauthorized use of a firearm during a third-degree assault convictions and order a new trial on those charges, but affirm his remaining convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2011, Joseph shot Imbert Zephirin while several people were watching a movie and otherwise congregating near a roadway. (J.A. 246.) The People of the Virgin Islands charged Joseph with numerous

offenses, including attempted first-degree murder, and a jury trial commenced on November 14, 2011. At trial, Zephirin testified that Joseph came up to him and simply shot him for no reason, and told him to tell the police that it had resulted from a drive-by shooting. The People also introduced, through the testimony of Detective Albion George, a statement Joseph made on the night of the shooting, where he stated that three shots had been fired at Zephirin from a car. Another prosecution witness, Detective Monique Hodge, testified that shortly after arriving at the crime scene, she and other officers observed Joseph acting suspiciously by putting his hand down his pants and looking through bushes, and after being told that a crime scene technician would swab his hand, he admitted to having fired a gun. Hodge proceeded to take a second statement, in which Joseph denied shooting Zephirin, but stated that he had fired a gun into the sky and then threw it into the bushes.

Joseph testified in his own defense at trial, in which he claimed that he and Zephirin had been playing a game of "stick up" when the gun accidentally discharged twice. Although Joseph admitted to telling Zephirin to say that he had been shot in a drive-by, and admitted to denying his involvement in the shooting in his prior statements to the police, he stated that he "couldn't handle the burden of . . . accidentally shooting" Zephirin, and did not know if the police would believe his claim that the shooting had been accidental. (J.A. 453.) Another defense witness who was present at the location of the shooting, Fabien Clervil, corroborated Joseph's claim that he had been playing with Zephirin, but stated that he did not see them playing with a gun nor witness the shooting himself. When called as a rebuttal witness, Zephirin categorically denied playing a "stick up" game with Joseph.

The jurors began their deliberations on November 15, 2011. However, during deliberations, the jurors sent two notes to the trial judge, the first of which the judge responded to without notifying Joseph or hearing from counsel. Eventually, the jurors acquitted Joseph of attempted murder in the first degree, attempted murder in the second degree, unauthorized use of a firearm during an attempted murder, and assault in the first degree, but found him guilty of assault in the third degree, unauthorized possession of a firearm, unauthorized use of a firearm during a third degree assault, and reckless endangerment.

The Superior Court initially scheduled Joseph's sentencing for December 20, 2011. However, at the sentencing hearing, the Superior

Court *sua sponte* noted that it did not instruct the jury that the People possessed the burden of disproving Joseph's accidental shooting defense, and requested that the parties file supplemental briefs on the issue. After both parties did so, the Superior Court held a hearing on August 7, 2012, and after hearing oral arguments, set aside Joseph's convictions and orally ordered a new trial pursuant to Superior Court Rule 135 and Federal Rule of Criminal Procedure 33. On August 14, 2012, the People filed a motion for reconsideration, which argued that Federal Rule of Criminal Procedure 33 prohibits a judge from ordering a new trial *sua sponte*, and that even if the brief Joseph filed in response to the December 20, 2011 oral order could be construed as a motion for a new trial, it was untimely because Federal Rule 33 requires that a defendant file such a motion within 14 days after the jury's verdict. At an October 12, 2012 status conference, the Superior Court orally granted the People's motion to reconsider and vacated its oral order granting a new trial, and re-instated the prior jury verdict. The Superior Court subsequently memorialized that decision in a written October 23, 2012 Order.

The Superior Court conducted a sentencing hearing on November 15, 2012, and issued a written Judgment and Commitment on November 29, 2012. Joseph timely filed his notice of appeal on November 27, 2012.[1]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." In a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g., Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)). Therefore, this Court possesses appellate jurisdiction over this appeal.[2]

---

[1] "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I.S.Cт.R. 5(b)(1).

[2] In his appellate brief, Joseph contend that this Court lacks jurisdiction over this appeal because the Superior Court stayed execution of the sentence of some of his convictions in

"Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error." *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). However, this Court reviews the grant of a motion for reconsideration only for abuse of discretion, unless the decision is premised on application of a legal precept, in which case review is plenary. *In re Hartlage*, 54 V.I. 446, 450 (V.I. 2010). But "when a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived." *Id.* (citing V.I.S.CT.R. 4(h) and *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009)).

## B. The New Trial Motion

Joseph, as his primary issue on appeal, contends that the Superior Court committed error when it granted the People's motion for reconsideration, vacated its oral grant of a new trial, and reinstated the jury's November 15, 2011 verdict. According to Joseph, Superior Court Rule 135, and not Federal Rule of Criminal Procedure 33, is the applicable legal authority, and Rule 135 — unlike Federal Rule 33 — does not preclude a judge from ordering a new trial *sua sponte*. In its appellate brief, the People allege that this Court has purportedly held that both Superior Court Rule 135 and Federal Rule 33 govern motions for a new trial, and renew their argument that Federal Rule 33 precluded the Superior Court from *sua sponte* inquiring as to whether a new trial is warranted.

Superior Court Rule 135 reads, in its entirety, as follows:

> The court may grant a new trial to a defendant if required in the interest of justice. The court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment. A motion for a new trial based on other grounds shall be made within 10 days

conformance with section 104 of title 14 of the Virgin Islands Code. This Court thoroughly addressed, and rejected, this very same claim in *Williams v. People*, 58 V.I. 341, 346-48 (V.I. 2013).

after finding of guilty, or within such further time as the court may fix during the 10-day period. In no event shall this rule be construed to limit the right of a defendant to apply to the court for a new trial on the ground of fraud or lack of jurisdiction.

SUPER. CT. R. 135. In contrast, Federal Rule 33 establishes the following requirements:

(a) DEFENDANT'S MOTION. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) TIME TO FILE.

(1) *Newly Discovered Evidence*. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) *Other Grounds*. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

FED. R. CRIM. P. 33. Thus, Joseph is correct that Federal Rule 33 differs from Superior Court Rule 135, in that Federal Rule 33(a) explicitly provides that only a defendant may move for a new trial, whereas Superior Court Rule 135 imposes no such limitation.

■ ■ Unquestionably, Superior Court Rule 135 applies to the exclusion of Federal Rule 33. Although Superior Court Rule 7 provides that "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Criminal Procedure," this Court has repeatedly instructed "that[] when a Superior Court rule governs the same subject matter as a federal rule, the federal rule cannot apply to Superior Court proceedings pursuant to Superior Court Rule 7 when application of the federal rule would render the Superior Court rule 'wholly superfluous.' " *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 275 n.11 (V.I. 2012) (quoting *Corraspe v. People*, 53 V.I. 470, 482-83 (V.I. 2010)). Importantly, this Court has emphatically rejected the proposition that a

federal rule may "supplement" a Superior Court rule "by creating additional requirements that exceed . . . the local rule." *Terrell v. Coral World*, 55 V.I. 580, 590 n.12 (V.I. 2010) (citing *Blyden v. People*, 53 V.I. 637, 659 (V.I. 2010)). Consequently, there is absolutely no basis in this Court's Rule 7 jurisprudence to impute Federal Rule 33(a)'s restriction that only a defendant may move for a new trial onto Superior Court Rule 135, when Superior Court Rule 135 contains no such restrictive language. *Corraspe*, 53 V.I. at 482 ("While [Superior Court] Rule 126 . . . is not as comprehensive as its federal counterpart, [Federal] Rule [of Criminal Procedure] 11, and does not expressly prohibit judicial participation in plea discussions . . . . if we were to conclude that Rule 11 still applies to plea proceedings in the Superior Court, notwithstanding the addition of Rule 126, then Rule 126 would be rendered wholly superfluous.").[3]

Likewise, the People are mistaken that this Court has ratified the use of Federal Rule of Criminal Procedure 33 in Superior Court proceedings. The sole case of this Court[4] cited by the People for this proposition — *Stevens v. People*, 52 V.I. 294 (V.I. 2009) — was decided approximately a year before *Corraspe* clarified the relationship between the Superior Court rules and the federal rules. But even in *Stevens*, we recognized that it is Superior Court Rule 135 — and not Federal Rule 33

---

[3] In its motion for reconsideration, the People contend that this Court should nevertheless apply Federal Rule 33 because the Advisory Committee Notes to Federal Rule of Criminal Procedure 33 provides that the defendant must file a motion for a new trial because "problems of double jeopardy arise when the court acts on its own motion." However, "the protections afforded by the Double Jeopardy Clause — like all other constitutional rights — may be waived by the defendant, through his counsel." *Najawicz v. People*, 58 V.I. 315, 324 (V.I. 2013) (collecting cases). In this case, while the new trial issue had been raised by the trial judge *sua sponte* at the December 20, 2011 hearing, the transcript of the August 7, 2012 hearing reflects that Joseph, through his counsel, actively argued in favor of a new trial. Moreover, Joseph has appealed the grant of the People's motion for reconsideration to this Court. Consequently, he has waived any double jeopardy objection to a new trial. *See United States v. DiSilvio*, 520 F.2d 247, 250 n.6 (3d Cir. 1975) ("[A] defendant who moves for a mistrial or who seeks a reversal of a criminal conviction has *waived* his double jeopardy objection." (citing *Green v. United States*, 355 U.S. 184, 189, 78 S. Ct. 221, 2 L. Ed. 2d 199, 77 Ohio Law Abs. 202 (1957))).

[4] In its brief, the People also cite two Superior Court decisions — *People v. Morton*, 57 V.I. 72 (V.I. Super. Ct. 2012) and *People v. Gagliani*, 51 V.I. 81 (V.I. Super. Ct. 2009) — for the proposition that Federal Rule 33 governs motions for a new trial. These decisions, however, are not binding on this Court, and in any case are clearly inconsistent with this Court's holdings in *Corraspe*, *Blyden*, *Terrell*, and *Stevens*.

— which governs motions for a new trial in Virgin Islands local courts. As we explained,

> *A motion for a new trial which challenges a conviction based on the weight of the evidence is governed by Rule 135 of the Rules of the Superior Court.* Rule 135, like its federal counterpart, Rule 33 of the Federal Rules of Criminal Procedure, permits a trial court to grant a new trial in "the interest of justice." Given the similarity between the two rules, on appeal we review a denial of a motion for new trial under Rule 135 using the same standard as federal courts use in reviewing a denial of a motion for a new trial under Rule 33. We will not interfere with the Superior Court's ruling absent an abuse of discretion.

*Stevens*, 52 V.I. at 304 (emphasis added). In other words, in *Stevens* this Court explicitly identified Superior Court Rule 135 as the appropriate legal authority, but noted that because Superior Court Rule 135 and Federal Rule 33 both adopt an "in the interest of justice" standard,[5] we would adopt the federal courts' practice of reviewing, on appeal,[6] the denial of a new trial motion only for abuse of discretion. Therefore, the Superior Court erred when it applied Federal Rule 33(a) to conclude that it lacked the authority to *sua sponte* order a new trial.[7]

---

[5] In its brief, the People also allege that "although the People cited only Rule 33 in its Motion for Reconsideration, said basis for a new trial, the 'interest of justice,' was before the [Superior Court] for its consideration when it ruled on the People['s] Motion for Reconsideration." (Appellee's Br. 7.) However, it is clear from the record that the Superior Court vacated its oral August 7, 2012 order not because it believed a new trial was not in the interest of justice, but because it believed that Federal Rule 33(a) precluded it from acting *sua sponte*.

[6] Although not dispositive to the issue of whether Federal Rule 33(a) or Superior Court Rule 135 represents the appropriate legal standard, we note that permitting the Superior Court to order a new trial *sua sponte* when it detects an obvious error — as it did in this case — promotes judicial economy, in that the defendant, who in many cases may be incarcerated after the jury has announced its verdict, may immediately receive a new trial — to the extent he or she desires one — without having to prosecute an appeal in this Court. Likewise, the People may benefit from such speedy action, since there will naturally be a lower likelihood of memories fading or witnesses becoming unavailable between trials.

[7] We recognize that although Superior Court Rule 135 does not limit new trial motions solely to the defendant, it does provide that "[a] motion for a new trial based on [grounds other than newly discovered evidence] shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period." SUPER. CT. R. 135. While not asserted by the People on appeal or at the trial level, it could be argued that this limitations period should apply when the Superior Court acts on its own motion, and that the Superior

■ Nevertheless, while the Superior Court erroneously invoked Federal Rule 33(a) to the exclusion of Superior Court Rule 135, this error, in and of itself, will not necessarily require reversal, for "[n]o error or defect in any ruling or order or in anything done or omitted by the Superior Court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." V.I.S.Ct.R. 4(i). When the Superior Court erroneously invokes a procedural rule to deny a motion — such as when it denies a motion as being untimely — we generally will disregard the error if "the Superior Court could have properly denied [the] motion on the merits even if it had not erroneously denied it [on procedural grounds]." *Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3, *12 (V.I. Jan. 14, 2010) (unpublished) (citing *Baldwin v. Credit Based Analysis Asset Servicing and Securitization*, 516 F.3d 734, 738 (8th Cir. 2008)). Thus, to determine whether its erroneous application of Federal Rule 33(a) is harmless, we consider whether the Superior Court abused its discretion when it originally granted a new trial on all counts.

■ As noted above, the Superior Court ordered a new trial because it failed to instruct the jury that the People were required to disprove, beyond a reasonable doubt, Joseph's claim that he accidentally shot Zephirin. As Joseph acknowledges in his appellate brief, whether, and under what circumstances, an accidental discharge instruction should be given "appears to be a matter of first impression in our jurisdiction." (Appellant's Br. 22.) Nevertheless, we agree that when a defendant raises a claim of accidental discharge in an assault case, a separate instruction on the burden of proof should be granted. It is well established in the Virgin Islands that when a defendant raises a claim of self-defense — even through his own testimony without any corroboration — the Superior Court possesses a duty to instruct the jury that the People must disprove

Court itself failed to raise the issue in a timely manner when it waited until the December 20, 2011 hearing to require the parties to consider the issue. However, we decline to decide this issue as part of this appeal because the 10-day limitations period is unquestionably a non-jurisdictional claims processing rule whose application — even if applicable — has been waived through the People's failure to assert it in a timely manner. *See Fuller v. Browne*, 59 V.I. 948, 953 n.3 (V.I. 2013) (citing *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 455-56 (V.I. 2012)).

the self-defense claim beyond a reasonable doubt. *Phipps v. People*, 54 V.I. 543, 547-48 (V.I. 2011) (citing *Gov't of the V.I. v. Smith*, 949 F.2d 677, 681 (3d Cir. 1991)). Since the Virgin Islands Code defines assault and battery as the use of "any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used," 14 V.I.C. § 292, and violence in self-defense is lawful, *see* 14 V.I.C. §§ 43, 293(a)(6), this Court has concluded "that when self-defense has been placed in issue, the jury must be instructed separately regarding the burden of proof on that issue." *Phipps*, 54 V.I. at 549 (internal quotation marks omitted) (quoting *Smith*, 949 F.2d at 681).

■ A claim that one discharged a firearm accidentally is, of course, distinct from self-defense, in that it does not fall within the definition of lawful violence set forth in section 293 of title 14. However, as Joseph argues in his brief, his testimony that he accidentally shot Zephirin, if believed by the jury, would negate the "intent to injure" requirement for an assault. Since "intent to injure," like "unlawful violence," is an element of third-degree assault, and the People must prove all elements of assault beyond a reasonable doubt, we conclude that the reasoning of *Phipps* applies with equal force to claims that an assault resulted from an accidental shooting. In this case, Joseph testified that he had been playing with Zephirin and that the gun accidentally discharged, and Clervil partially corroborated Joseph's claim by testifying that he had seen Joseph and Zephirin playing shortly before the shooting. Consequently, "a quantum of evidence" existed for the jury to find that Joseph accidentally discharged the firearm, and therefore did not act with the intent to injure Zephirin.[8] *Phipps*, 54 V.I. at 548 n.3.

■ But while a separate burden of proof instruction may have been warranted as to the assault charge and the related charge of using a firearm during commission of an assault, such an instruction was not necessary to the other charges. Section 2253(a) of title 14 makes it a crime for an individual to possess, bear, transport, or carry a firearm without a license or other authorization. At trial, the People introduced uncontradicted

---

[8] In its appellate brief, the People contend that this Court should disregard Joseph's accident defense because he failed to introduce any evidence, other than his own testimony, to corroborate his claim of accidental discharge. However, as we explained in *Phipps*, the defendant's own testimony, without independent corroboration, is sufficient to establish the quantum of evidence necessary to warrant a separate jury instruction on burden of proof.

evidence that Joseph lacked a firearms license, and Joseph himself testified at trial that he had a firearm. Thus, even if Joseph accidentally shot Zephirin, it has absolutely no bearing on the firearm possession charge.

 Likewise, whether or not Joseph intended to shoot Zephirin is irrelevant to the reckless endangerment charge. "A person is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person." 14 V.I.C. § 625(a). Thus, unlike the assault statute, the reckless endangerment statute does not require proof of intent to injure, but the lesser intent of recklessness. It should go without saying that aiming a loaded firearm at someone, even without intending to pull the trigger, can cause grave risk of death. *Augustine v. People*, 55 V.I. 678, 689-90 (V.I. 2011) (collecting cases). In addition, even if Joseph and Zephirin were, in fact, playing a game, others present, including Clervil, could have been injured in the area of the Frydenhoj Ball Park, a public place where members of the public, including the participants and witness in this case, gathered.

 For these reasons, we conclude that while the Superior Court correctly held that it erred when it failed to give an accidental defense instruction, it abused its discretion when it ordered a new trial as to all the charges on which he was found guilty — given that Joseph's intent to injure Zephirin is only relevant to the third-degree assault and use of a firearm during a third-degree assault charges — and that its erroneous invocation of Federal Rule 33(a) as a basis to vacate its oral grant of a new trial on all counts is harmless with respect to the reckless endangerment and firearm possession counts. Consequently, we partially reverse the Superior Court's October 12, 2012 ruling and its October 23, 2012 Order embodying that ruling, vacate in part the November 29, 2012 Judgment and Commitment, and remand this matter for the new trial previously ordered on August 7, 2012, only with respect to Joseph's convictions for third-degree assault and unauthorized use of a firearm during a third-degree assault.[9]

---

[9] Four days before oral argument in this case, Joseph filed an "After Brief Authority Letter" with this Court, in which he contended that the United States Supreme Court's decision in

## C. Jury Issues

 In his appellate brief, Joseph also raises numerous other arguments, several of which have already been foreclosed by recent decisions of this Court.[10] However, Joseph also asserts two issues of

---

*Evans v. Michigan*, 133 S. Ct. 1069, 185 L. Ed. 2d 124 (2013), requires that this Court completely dismiss all charges against him because the Superior Court's act of setting aside, and subsequently reinstating, the jury's guilty verdict violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. During oral argument, this Court permitted the People to file a supplemental brief responding to Joseph's Double Jeopardy claim, which it did on November 26, 2013.

We agree with the People that the *Evans* case — where a judge dismissed the charges in the middle of trial *before* the jury reached a verdict — is wholly irrelevant to this appeal, in that at no point did the Superior Court or the jury actually acquit Joseph of any of the four charges of which he was ultimately convicted, including the third-degree assault charge at issue on this appeal. *See* 133 S.Ct. at 1073, 1075-76. *See also Gilbert v. People*, 52 V.I. 350, 364 (V.I. 2009) (explaining that a new trial, and not an acquittal, constitutes the appropriate remedy for an erroneous jury instructions). But even if the Superior Court's oral grant of a new trial was tantamount to an acquittal — which we do not hold — the act of setting aside, and then subsequently reinstating, a jury's guilty verdict does not violate the Double Jeopardy Clause. *See Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S. Ct. 1129, 160 L. Ed. 2d 914 (2005) ("the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty."). And in any event, as we noted earlier, the right to be free from double jeopardy may be waived by a defendant's counsel, and Joseph, by arguing in favor of a new trial before the Superior Court and taking an appeal to this Court, waived his double jeopardy rights. *See Najawicz*, 58 V.I. at 324; *DiSilvio*, 520 F.2d at 250 n.6.

[10] For instance, Joseph challenges the sufficiency of the evidence on his firearms convictions on the grounds that "[t]he People proved that no firearm license was issued to Joseph," yet "it did not prove that the firearm was not registered." (Appellant's Br. 25.) According to Joseph, "the law requires proof that the firearm was not licensed, not that Joseph had no license." (*Id.* at 26 (emphasis omitted)). However, Joseph "ignores the established law that, under Virgin Islands law, firearms licenses are issued to individuals, *see* 23 V.I.C. § 454, and those licenses are 'not transferrable,' 23 V.I.C. § 457(1)." *Simmonds v. People*, 59 V.I. 480, 490 (V.I. 2013) (citing *Phillip v. People*, 58 V.I. 569, 589-90 (V.I. 2013)). Therefore, Joseph's sufficiency argument is wholly without merit.

Likewise, Joseph raises two challenges to section 2253(a) of title 14 that this Court has previously rejected. First, he contends that section 2253(a) violates section 3 of the Revised Organic Act, which provides, in pertinent part, that "no person for the same offense shall be twice put in jeopardy of punishment." 48 U.S.C. § 1561. Second, Joseph contends that section 2253 is in irreconcilable conflict with section 104 of title 14, which provides that "[a]n act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one." However, as Joseph acknowledges in his appellate brief, this Court considered — and rejected — both of these arguments in *Ward v. People*, 58 V.I. 277, 282-86 (V.I. 2013) and *Williams v. People*, 58 V.I. 341, 352 (V.I. 2013). Since Joseph "has provided us with no grounds to cause us to revisit our decision[s]," but simply presented this Court with the

351

colorable merit, both of which relate to the Superior Court's treatment of the jury. In light of our decision to only order a new trial on the third-degree assault and use of a firearm during a third-degree assault charges, we consider whether these two issues may warrant a new trial on the remaining counts. For the following reasons, we hold that they do not.

### 1. Juror Questions

■■ Joseph argues that the Superior Court erred by permitting jurors to ask questions of the witnesses. We agree, for the same reasons set forth in our prior decisions on this issue, that the Superior Court unquestionably committed error when it employed this procedure. *See, e.g., Todmann v. People*, 59 V.I. 926, 936 (V.I. 2013); *Fontaine v. People*, 56 V.I. 591, 596 (V.I. 2012). However, as we explained in *Todmann*, the Superior Court's practice of permitting jury questions, while erroneous, will not warrant reversal unless "the questions asked by the jurors directly prejudiced [the defendant] or violated any rule of evidence." 59 V.I. at 936. In his brief, Joseph points to only two jury questions that he purports were so "devastating" as to warrant reversal:

> [JUROR QUESTION to JOSEPH]: Were you high or intoxicated when you shot [Zephirin]?
>
> [JOSEPH]: I wasn't smoking — I wasn't smoking any marijuana that night, only alcohol. I was intoxicated.
>
> THE COURT: Were you intoxicated from the alcohol?
>
> [JOSEPH]: Not that much very intoxicated to shoot somebody or hurt somebody.
>
> . . . .
>
> [JUROR QUESTION]: How many seconds were there between the two shots?
>
> [JOSEPH]: Well, when the first shot went off, he got up. He laid down on the ground. The gun was between my hands, between my feet, it went off for panic.
>
> Because I was yelling at him, his name. And it went off between my feet. It was, like, you can say a minute. Between a minute or two. A minute at least.

---

same arguments that were previously considered and rejected in those cases, we decline to revisit either decision as part of this appeal. *Id.*

THE COURT: How long was it?

[JOSEPH]: It was between —

THE COURT: You say a minute?

[JOSEPH]: Between the shots, less than a minute.

THE COURT: All right. Less than a minute.

[JOSEPH]: Like 40 seconds.

(J.A. 540-41.) Although Joseph contends that these questions "essentially asked Joseph what type of crime he was committing when this shooting occurred," (Appellant's Br. 21 (emphasis omitted)), a plain reading of the transcript simply does not support this claim. On the contrary, the first question benefited Joseph by providing grounds for an intoxication instruction that was later given (J.A. 629-30), whereas the second question was probative to determining Joseph's intent. Therefore, Joseph did not suffer any prejudice as a result of the Superior Court's use of jury questions at trial, thus rendering its error harmless.

### 2. Trial Judge's Communications with the Jury

Joseph also argues that the Superior Court erred in how it responded to the jury's two notes. In its first note, the jury asked, "if [we return] a verdict of first degree assault, do we have to judge the third degree assault?" (J.A. 668.) Without consulting with — or even notifying — the defendant or either of the attorneys, the Superior Court conveyed to the jurors, through a marshal, "that the answer to that question is yes." (*Id.*) According to Joseph, "the jury was not minded to convict Joseph [of third-degree assault,]" and the Superior Court's response to this note constituted "interference with the work of the jury, by specifically requesting the jury to take an action detrimental to Joseph." (Appellant's Br. 17.)

We agree with Joseph that the Superior Court unquestionably violated both the United States Constitution and Virgin Islands statutory law when it failed to even notify the parties of the note, and *a fortiori* when it issued its own response without allowing for any input. *See, e.g.,* *United States v. Robinson,* 560 F.2d 507, 516 (2d Cir. 1977) (citing *Rogers v. United States,* 422 U.S. 35, 39, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975)); 5 V.I.C. § 357 ("After the jury have retired for deliberation, if they desire to be informed on any point of law arising in the case, they may require the officer having them in charge to conduct them into court.

Upon their being brought into court the instruction required shall be given by the court in the presence of or after notice to the parties or their attorneys."). Moreover, the Superior Court compounded this error by failing to instruct the jurors personally, instead delegating the task to a marshal, a court employee who may not have necessarily conveyed the Superior Court's answer correctly, if at all.

▆▆▆ Nevertheless, the Superior Court's errors in this regard do not constitute *per se* reversible error, but will only warrant reversal if the defendant suffered prejudice. *Morris v. United States*, 523 Fed. Appx. 7, 9 (2d Cir. 2013); *see also Rogers*, 422 U.S. at 40. In this case, the jury's communication, and the Superior Court's response, related solely to the first-degree and third-degree assault charges. However, the jury acquitted Joseph of first-degree assault, and this Court has ordered a new trial on the third-degree assault charge — the same remedy that this Court would order if it were to conclude that the Superior Court committed reversible error. To the extent an instruction on the third-degree assault charge may be relevant to the firearms charge, the Superior Court's response to the first note — that the jurors were required to deliberate both the first-degree and the third-degree assault charges — was legally correct. *See, e.g., Suarez v. Byrne*, 10 N.Y.3d 523, 890 N.E.2d 201, 209, 860 N.Y.S.2d 439 (2008) (holding jurors must consider lesser included offense after acquitting on more serious charge). Moreover, the record contains absolutely no evidence that the Superior Court or the marshal engaged in any other *ex parte* communication with jurors beyond this single isolated incident. Therefore, the Superior Court's errors in not consulting the parties before submitting a response, and delegating delivery of its response to a marshal, are harmless, and do not warrant setting aside any of Joseph's remaining non third-degree assault related convictions. *Morris*, 523 Fed. Appx. at 9.

Likewise, the Superior Court's response to the second note — which it crafted after consulting counsel for both parties — does not warrant reversal. In its second note, the jury asked "if the verdict in Count Three, assault in the first degree with intent to commit murder in violation of [14 V.I.C. § 295(1)] is not guilty, can we have a guilty verdict in Count Four unauthorized use of a firearm during the commission of an assault in the first degree in violation of [14 V.I.C. § 2253(a)]?" (J.A. 669.) After hearing from both parties, the Superior Court announced that it would instruct the jurors that they could not find Joseph not guilty of the

substantive offense while simultaneously convicting him for possession of a firearm during the commission of that crime. (*Id.*)

In his appellate brief, Joseph correctly notes that the Superior Court incorrectly answered the question, since decisions of both this Court and the United States Supreme Court have established that such inconsistent verdicts are permissible. *See, e.g., People v. Thompson*, 57 V.I. 342, 349 (V.I. 2012) (citing *United States v. Powell*, 469 U.S. 57, 64-66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)). However, the Superior Court's error benefited Joseph by erroneously notifying the jury that an acquittal on the substantive offense required an acquittal of the related firearm possession charge, and thus precludes reversal on appeal. *Francis v. People*, 52 V.I. 381, 393-94 (V.I. 2009) (holding that "an error that favors the defendant is a species of harmless error . . . of which he cannot complain") (internal quotation marks omitted) (quoting *People v. Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577, 579 (1974)).[11]

## III. CONCLUSION

For the foregoing reasons, we conclude that the Superior Court erred when it granted the People's motion for reconsideration based on the incorrect premise that Federal Rule 33(a) applied to the exclusion of Superior Court Rule 135, but that a new trial is only warranted as to the third-degree assault and the use of a firearm during a third-degree assault charges. We also conclude that Joseph's remaining arguments do not justify reversal. Accordingly, we reverse in part the Superior Court's October 12, 2012 ruling and its October 23, 2012 Order embodying that ruling, reinstate in part the oral August 7, 2012 Order, and vacate in part the November 29, 2012 Judgment and Commitment as they relate to the third-degree assault and use of a firearm during a third-degree assault charges, but affirm the November 29, 2012 Judgment and Commitment in all other respects.

---

[11] Joseph also argues that the cumulative error doctrine justifies setting aside his convictions. Even if this Court were inclined to adopt the cumulative error doctrine — which we have not yet done, *see Simmonds*, 59 V.I. at 504 n.16 — the instant matter does not qualify as "the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial," given the relatively small number of errors and the fact that many of them actually inured in Joseph's favor.